## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DCD NUCAR ALNI LLC, individually and as successor by merger to DCD NUCAR ALCD LLC, and DCD RE PLAZA LANE LLC,    : <br><br> Plaintiffs,   : <br>   : <br> v.   : <br>   : <br> ROTHROCK MOTOR SALES, INC.,   : <br> DAVID B. ROTHROCK, individually and on behalf of THE ESTATE OF BRUCE L. ROTHROCK, SR.,   : <br> BRUCE L. ROTHROCK, JR,   : <br> DEAN A. ROTHROCK,   : <br> ROCK REAL ESTATE HOLDINGS, LLC, and   : <br> ROCK REAL ESTATE FAMILY PARTNERS, LP : <br>   : <br> Defendants.   : | Case No. |

## **COMPLAINT**

Plaintiffs, DCD NUCAR ALNI LLC (the successor by merger of DCD NUCAR ALNI LLC and DCD NUCAR ALCD LLC) and DCD RE Plaza Lane LLC, plead the following allegations and claims against Defendants, Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP.

### **Nature of the Action**

This is a complaint for breach of contract, indemnification, fraud, and rescission arising out of the sale of two well-known Lehigh County automobile dealerships previously operating under the Rothrock family name, to a family-owned automotive group based in Massachusetts run by the Dagesse family.

The Dagesse family has operated automobile dealerships for over 40 years and has grown to be one of the largest automotive groups in New England. In 2023, the Rothrock family was looking to sell off the last of its remaining dealerships, a Nissan dealership and a Chrysler Dodge Jeep and Ram ("CDJR") dealership located in Allentown, Pennsylvania (collectively, the "Dealerships"). The Dagesse family saw this as an opportunity to continue to grow their business with the addition of two dealerships in Pennsylvania, and – for an eight-figure sum – purchased the assets of the Dealerships and the associated real estate from Rothrock Motor Sales, Inc. ("Rothrock Motors") and the Rothrock family.

Unbeknownst to the Dagesse family at the time, Rothrock (defined below) was perpetrating a fraud. Rothrock intentionally mispresented the financial well-being of the Dealerships to induce the Dagesse family to buy the Dealerships' business assets and the associated real estate. As set forth in more detail below, the fraud was pre-meditated, willful, wanton and intentional. Specifically, Rothrock mispresented the income and profits of the Dealerships by manipulating financial data and instructing the Dagesse family to interpret the financial information Rothrock supplied in a manner that overstated certain income known as "pack" monies. The result was that the Dagesse family had a grossly inflated and inaccurate understanding of the income of, and overall financial picture for, the Dealerships, which was only discovered after a post-closing forensic investigation.

Had the Dagesse family known the true financial state of the Dealerships, they would never have purchased the Dealerships or the related real estate. The Dagesse family seeks recission of the subject contracts between the parties, or in the alternative, compensatory and punitive damages for the expenses and losses they have suffered and will continue to suffer at the hands of Rothrock's outrageous conduct that caused these losses.

## I.      Parties

1.      Plaintiff DCD NUCAR ALNI LLC ("Nucar") is a Delaware limited liability company that owns and operates the Dealerships, now known as Nucar Nissan of Allentown and Nucar CDJR of Allentown. Nucar's members are Christopher Dagesse ("Dagesse"), a resident of Massachusetts, and the 2012 Dagesse Family Trust organized under the laws of New Hampshire. Nucar is the successor by merger to DCD NUCAR ALCD LLC, which along with Nucar, was also a party to the transaction described herein. Nucar and, prior to its merger with Nucar, DCD NUCAR ALCD LLC, were the purchasers of the Dealerships' business assets in the transaction described herein. Nucar's registered address is 1000 North King Street, Wilmington, Delaware 19801.

2.      Plaintiff DCD RE Plaza Lane LLC ("Nucar Real Estate") is a Delaware limited liability company that owns the real estate in Allentown, Pennsylvania upon which the Dealerships acquired by Nucar operate, after having purchased the Dealerships' business assets from Rothrock Motors. Nucar Real Estate has a single member, the 2012 Dagesse Family Trust, and its trustees are Elaine Dagesse who is a resident of New Hampshire and Joel Carpenter who is a resident of Massachusetts. Nucar Real Estate's registered address is also 1000 North King Street, Wilmington, Delaware 19801.

3.      Defendant Rothrock Motors is a Pennsylvania Corporation with an outdated registered address located at 1648 Plaza Lane, Allentown, Pennsylvania 18104 (part of the real estate sold in 2024 to Plaintiffs) and whose authorized agent (David B. Rothrock) resides at 1645 Kecks Road, Breinigsville, Pennsylvania 18031.   Rothrock Motors was the seller of the Dealerships' business assets in the transaction described herein.

4.      Defendant David is either the Executor of Defendant the Estate of Bruce L. Rothrock, Sr., Deceased (the "Bruce Sr. Estate"), or in the alternative, may be properly charged herein as an Executor *de son tort* of the Bruce Sr. Estate. Via its purported legal representative, David, the Bruce Sr. Estate is situated at 1645 Kecks Road, Breinigsville, Pennsylvania 18031. The Bruce Sr. Estate is a Seller Related Party under the APA (defined below) and, based on the APA, is the sole and only shareholder of Rothrock Motors.

5.      Defendant Rock Real Estate Family Partners, LP ("Rock Real Estate") is a Pennsylvania limited liability partnership.  Rock Real Estate was the seller of the real estate upon which the Dealerships sold to Nucar operate.  Based on the APA, the sole and only general partner of Rock Real Estate is Rock Holdings (defined below) and the sole and only limited partners of Rock Real Estate are David, Bruce, and Dean (each defined below).

6.      Defendant Rock Real Estate Holdings, LLC ("Rock Holdings") is a Pennsylvania limited liability company with an outdated registered address located at 1648 Plaza Lane, Allentown, Pennsylvania 18104 (part of the real estate sold in 2024 to Plaintiffs) and whose authorized agent (David) resides at 1645 Kecks Road, Breinigsville, Pennsylvania 18031. Rothrock Holdings is also a Seller Related Party under the APA and, based on the APA, is the sole and only general partner of Rock Real Estate.

7.      Defendant David B. Rothrock ("David") is an individual residing at 1645 Kecks Road, Breinigsville, Pennsylvania 18031.  David is also a Seller Related Party under the APA and, based on the APA, is a limited partner of Rock Real Estate.

8.      Defendant Bruce L. Rothrock, Jr. ("Bruce") is an individual residing at 990 Palmers Mill Road, Media, Pennsylvania, 19063.  Bruce is also a Seller Related Party under the APA and, based on the APA, is a limited partner of Rock Real Estate.

9.    Defendant Dean A. Rothrock ("Dean") is an individual residing at 73-1215 Hamos Street, Kailua Kona, Hawaii 96740.  Dean is also a Seller Related Party under the APA and, based on the APA, is a limited partner of Rock Real Estate.

10.    Defendants Rothrock Motors, the Bruce Sr. Estate, Rock Real Estate, Rock Holdings, David, Bruce, and Dean are collectively referred to herein as "Rothrock."

## II.    Jurisdiction and Venue

11.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and there is complete diversity between the New Hampshire and Massachusetts-citizen Plaintiffs and the Pennsylvania (and in one case, Hawaii) based Defendants.

12.    This Court has personal jurisdiction over Defendants both generally and specifically because, on information and belief, Defendants do and have done substantial business in this judicial District, including: (a) committing acts of fraud in this State and judicial District out of which this action arises; (b) regularly conducting business in this State and judicial District; (c) directing advertising to or soliciting business from persons residing in this State and judicial District; (d) incorporating and/or residing in this State and judicial District; and (e) in several cases literally maintaining domicile in this State and judicial District.  Personal jurisdiction is also proper because the parties consented in the subject agreements to the jurisdiction and venue of this Court.

13.    Venue is likewise appropriate in this Court for the reasons stated above.

## III.    Allegations as to All Counts

### A.    Initial Representations and the Dealership Purchase Transaction

14.    In or around early October, 2023, a well-known broker operating in the automotive dealer space approached Daniel and Christopher Dagesse, successful operators of more than 30

automobile dealerships throughout the United States, about two automobile dealerships for sale in Allentown, Pennsylvania, namely, the Dealerships.

15.     On October 23, 2023, Daniel Dagesse signed a non-disclosure agreement with this broker and was subsequently provided with a pitch deck containing financial information concerning the Dealerships (the "Pitch Deck").

16.     At the time Dagesse received this information, Rothrock had been operating car dealerships in Pennsylvania since the 1960s.

17.     Upon information and belief, the information contained in the Pitch Deck was supplied by one or more of the Defendants.

18.     The Pitch Deck stated that "Rothrock Motors has been Lehigh Valley motorists' most trusted name in automotive."

19.     At the time, the Dagesse family did not have any businesses, automotive or otherwise, located in Pennsylvania and did not know of, nor had they any prior business dealings with, Rothrock.

20.     The Pitch Deck contained specific revenue, expense, and net profit figures for the Dealerships, combined, for the years 2020 through the third quarter of 2023.

21.     The Pitch Deck also showed that Rothrock characterized a significant fraction of the Dealerships' annual net profits as "Add-Backs," and that by far the largest "Add-Back" component in every year was a "Pack Adjustment."

22.     The Pitch Deck included "Profit Performance," which reported financial figures, including adjusted profit figures, for the Dealerships, combined, for periods back to calendar year 2020.

23.     The Profit Performance pages from the Pitch Deck culminate in computations of the Adjusted Profits for the Dealerships for the 2020-2023 period, as follows:

- 2020: $1,055,636
- 2021: $2,153,545
- 2022: $1,616,019
- 2023: YTD (9 months): $1,153,830; annualized $1,538,452

24.     The Profit Performance pages from the Pitch Deck also include a row titled "Pack Adjustments."  In the automotive industry, a "pack" is a predetermined expense added by a dealer to the invoice price of a vehicle that is intended to account for overhead expenses such as rent, advertising, and vehicle reconditioning, and it reduces the revenue generated by the vehicle before a salesperson's commission is calculated.  Most dealerships, including those operated by Rothrock, utilize multiple "packs." Pack monies are also taken into income by a dealership and customarily "earned" and effective at the time a vehicle is sold.

25.     Reflecting that the Pitch Deck contained data compiled and supplied exclusively by Defendants, the broker (in its capacity as a mere messenger), disclaimed responsibility to the Plaintiffs for:

> (i) the information contained herein, or the accuracy or completeness thereof, including, without limitation, the income or expenses for the subject property or business [...] or the financial condition or prospects of any business, or (ii) any action taken or not taken in reliance thereon. [Broker] shall not have any liability to the recipient of this Executive Summary or its representatives that may be based on such information, errors therein or any omissions therefrom. All potential buyers and tenants disclaim reliance on any information contained in this Executive Summary and shall be responsible for undertaking any due diligence investigation to verify information set forth herein.

*Pitch Deck* at 35.

26.     Plaintiffs did not blindly accept the Pitch Deck at face value. However, after reviewing the information the Pitch Deck conveyed, Plaintiffs decided that the Dealerships presented a *potentially* attractive opportunity.

27.    Nucar inquired as to Rothrock's treatment of pack monies for the Dealerships. Specifically, on November 7, 2023, Nucar contacted the broker that supplied the Pitch Deck and asked about how Rothrock took its pack monies into income. The broker responded "Seller's W2 and or dealership income on the 13[1]th month stmt[1]…." In other words, the adjusted revenue and income figures supplied did ***not*** include the pack monies in income.

28.    Satisfied thus far with Rothrock's representations of the Dealerships' income, and continuing to perceive an attractive expansion opportunity, Plaintiffs proceeded with negotiating and entering into an Asset Purchase Agreement for the assets of the Dealerships (the "APA") and a Purchase and Sale Agreement for the real estate upon which the Dealerships operate (the "P&S") containing appropriate due diligence protections.

29.    The APA and P&S were finalized and executed on January 29, 2024, at which time the contractually-prescribed due diligence began.

30.    Because the real estate purchased by Plaintiffs under the P&S served no purpose except as the physical location of the Dealerships purchased under the APA and was specifically improved for the operation of automobile dealerships, the purchase of the real estate under the P&S was expressly contingent on the parties simultaneously closing on the Dealerships under the APA.

31.    All representations made by Rothrock in connection with the APA and P&S were explicitly warrantied to be true and accurate and intended for Plaintiffs to rely upon. On this point, the APA specifically provided that:

---

[1] The 13th month is an accounting concept in the automotive industry to record year-end items. Some of the more common items that are recorded in a 13th month could include adjustments for year-end reporting (i.e., depreciation, chargeback reserves, trade discounts, inventory write-downs), non-recurring, non-operational or unusual items (i.e., significant insurance claims or refunds, warranty/incentive audit chargebacks) and year-end items such as owner/executive bonuses, deferred compensations and investment gains or losses.

**8. <u>REPRESENTATIONS AND WARRANTIES OF SELLER</u>**. Seller makes the following representations and warranties to Buyer in order to induce Buyer to enter into and consummate this Agreement as contemplated herein and Seller hereby represents and warrants the following to be true on the Effective Date and as of the Closing Date:

[...]

       **8.23. <u>Disclosures</u>**. No representation or warranty or other statement made by Seller in this Agreement, nor any written statement, schedule or exhibit furnished or to be furnished by or on behalf of Seller pursuant to this Agreement, nor any document or certificate delivered to Buyer pursuant to this Agreement, contains or shall contain any untrue statement of a material fact or omits or shall omit to state a material fact necessary to make the statements contained therein not misleading.

APA at § 8; 8.23.

**B.**     **<u>Due Diligence and Continued Representations About Packs</u>**

32.    During the due diligence period provided for under the APA and P&S between January and April 2024, Nucar was in regular communication with Rothrock and the broker and specifically asked numerous times for clarification about the financial information for the Dealerships contained in the Pitch Deck and in financial spreadsheets and documentation supplied during due diligence in an effort to understand how Rothrock had prepared its financial statements and allocated for certain income and expenses. Of particular and continuing concern and focus for Nucar were Rothrock's treatment of pack monies.

33.    On January 6, 2024, Dagesse texted David asking him to "explain briefly the packs that are on the add back sheet that [the broker] sent us? Just trying to better understand that line."

34.    Additionally, on or about February 9, 2024, Nucar was given access to a "data room" created by Rothrock that contained certain financial information for the Dealerships. This financial data appeared to Nucar to be consistent with the Pitch Deck.

35.     On or about February 13, 2024, Rothrock provided Nucar with a document entitled Inventory Pack Listing which detailed all the pack monies that Rothrock utilized and how and where they were reflected in the Dealerships' financial statements.

36.     On February 18, 2024, Dagesse sent Rothrock a list of questions about the financials Rothrock had provided and specifically asked "Where is the statement's 1.5m [($1,5000,000)] of pack adjustment going?" to which David responded "These amounts are added to the cost of the vehicles and set up as liabilities on the balance sheet in the previously indicated accounts. The pack adjustments add back represents the unused portion of these packs that are remaining on the balance sheet.  These amounts are then adjusted into income in the 13th month each year for tax reporting purposes."

37.     During the due diligence period, David repeatedly told Dagesse both orally and in writing, that the pack monies must be added back to adjusted net income figures provided to Nucar to understand the "true" income and profit of the Dealerships. It would turn out that these representations from David were patently false.

38.     On February 27, 2024, Rothrock provided Nucar with a spreadsheet entitled "Vehicle Packs" that detailed all vehicle packs that Rothrock had used since 2022 and the amounts set for each as specific line items.  This spreadsheet also explained where Rothrock had included each pack line item on its balance sheet and indicated that the pack monies were taken into income in a 13th month statement (i.e. the pack monies are not reflected in income in the monthly financial statements Nucar received).

39.     On March 11, 2024, Dagesse asked David to confirm that Nucar needed to add the pack monies, reflected in the February 27th spreadsheet, to the adjusted net income data Rothrock had supplied for fiscal year 2022 to have an accurate picture of the Dealerships' income for 2022.

David quickly confirmed.  Consistent with the prior explanations from David, Dagesse understood that Rothrock's pack monies were not reflected in income in the financial statements Nucar received during due diligence and were only accounted for in Rothrock's 13th month financial statements.

40.    The acquisition of the assets of the Dealerships and real estate closed on May 1, 2024, with Rothrock affirming in a signed Certificate delivered to Nucar at closing that "[a]ll representations and warranties of Seller contained in Section 8 of the Agreement were true and correct in all material respects when made, are true and correct in all material respects on and as of the date hereof as if made as to the date hereof (except in each case for those representations and warranties which address matters only as of a particular date, which representations and warranties are true and correct in all material respects as of such particular date)."

**C.    The Discovery of Accounting Irregularities**

41.    Following the closing of its acquisition of the assets of the Dealerships, Nucar became alarmed after the Dealerships' profits were significantly less than expected, as projected from the data provided by Rothrock pre-closing.

42.    Nucar's accounting team reviewed general ledger entries for the Dealerships for a limited pre-closing period which had not been provided to Nucar pre-closing. The entries belied Rothrock's prior representations that it did not take pack monies into income until the 13th month and that the same needed to be added to the adjusted revenue figures for the Dealerships supplied by Rothrock for Nucar to understand the true income for the Dealerships' operations. In fact, Rothrock had already included pack monies as income in the Dealerships' revenue figures supplied to Nucar. By misrepresenting this fact, Rothrock misled Nucar into overcounting the pack monies in the Dealerships' revenue.

43.     After discovering this issue, Nucar hired Moss Adams, a public accounting firm with expertise relating to automotive dealerships, to conduct a forensic review of the financial statements, general ledgers, and other financial data prepared by Rothrock for the Dealerships prior to the sale to Nucar.  The dataset available to Moss Adams included the financial data supplied to Nucar by Rothrock prior to the closing of the purchase of the Dealerships' assets and documentation and data that had not been provided to Nucar by Rothrock prior to the closing.

44.     Moss Adams's investigation uncovered that the financial records supplied to Nucar prior to the closing of the APA and P&S by and/or at the direction of Rothrock in fact already accounted for the majority of pack monies in the Dealership's income for all years under consideration during due diligence, 2020-2024.  Accordingly, Rothrock's repeated statements to Nucar that the pack monies needed to be added to the income figures provided to understand the true financial picture of the Dealerships were materially false and misleading. Rothrock's misrepresentations caused Nucar to have a grossly inflated and inaccurate understanding of the income and profits for the Dealerships.

45.     It is inconceivable that Rothrock would accidentally misrepresent its income and profit in this manner. The only conceivable explanation is that Rothrock intentionally misrepresented its treatment of pack monies to deceive Nucar into placing a higher value on the Dealerships and the connected real estate than Nucar otherwise would have.

46.     Moss Adams computed that Rothrock's misrepresentations to Nucar regarding its treatment of pack monies resulted in material overstatements of the Dealerships' income for the operational years under examination, 2020-2023.

47.     These overstatements of income of the Dealerships induced Nucar and Nucar Real Estate to enter into and close on the transactions contemplated by the APA and P&S on false

- 12 -

pretenses and with a grossly inaccurate understanding of the financial picture of the Dealerships. Nucar and Nucar Real Estate would have never entered into the APA and P&S and purchased the Dealerships and related real estate, respectively, but for the false and misleading statements and information regarding the Dealerships' income and profitability provided to them by Rothrock.

48.     Rothrock's false and intentionally misleading statements not only fraudulently induced Nucar and Nucar Real Estate to proceed with the transactions but caused Nucar and Nucar Real Estate to overvalue the Dealerships and the related real estate, causing them to pay millions of dollars more for the Dealerships and the related real estate than they were worth.

## COUNT I – RESCISSION

49.     Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

50.     As indicated above, Rothrock made multiple material misrepresentations to Plaintiff Nucar regarding the Dealerships' financial condition.

51.     As also indicated above, Plaintiff Nucar relied upon these false representations when it decided to enter into the APA, allow the expiration of due diligence, and inevitably, complete the purchase of the Dealerships' business assets.

52.     In lockstep with Plaintiff Nucar, Plaintiff Nucar Real Estate relied upon Rothrock's false representations while making its decision to proceed with purchasing the real estate pursuant to the P&S, the purchase of which was expressly conditioned upon successful purchase by Nucar of the Dealerships' business assets.

53.     As a result of Rothrock's misrepresentations, Plaintiffs own two dealerships and real estate that they never would have otherwise purchased.  In the year following the Closing, the Dealerships operated substantially below the financial performance projected by the information

supplied by Rothrock to Plaintiffs, who relied upon the false representations from Rothrock as to their financial condition.

54.    The APA and P&S are capable of being unwound, and the parties can be restored to the condition they were in before Rothrock's tortious activities took place.

55.    The APA and P&S are voidable contracts that can be rescinded, and the parties can be returned to the condition they were in prior to Plaintiffs' purchase of the Dealerships' business assets and the real estate upon which they are located and the Dealerships operate.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for complete rescission of the January 29, 2024 Asset Purchase Agreement for the Dealerships' business assets and the Purchase and Sale Agreement for the related real estate, including any and all associated restitution and ancillary costs.

## COUNT II – BREACH OF CONTRACT

### (In the alternative to Recission)

56.    Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

57.    Plaintiff Nucar entered into a contract with Rothrock to purchase the assets of the Dealerships, the terms of which are memorialized in the APA.

58.    Under the APA, Rothrock agreed to provide a litany of disclosures relating to the Dealerships and represented and warranted that the information disclosed would not "contain any

untrue statement of a material fact or omi[t] or shall omit to state a material fact necessary to make the statements contained therein not misleading."

59.    At the time Rothrock entered into and made due diligence representations and warranties under the APA, it knew that Plaintiff Nucar Real Estate (a) intended to purchase the real estate containing the Dealerships for the sole purpose of allowing Plaintiff Nucar to operate the Dealerships, and (b) would not follow through with this transaction unless the Dealerships were actually purchased. The APA and P&S expressly stated these conditions.

60.    At the time Rothrock entered into the APA and made due diligence representations and warranties under the APA, it knew that Plaintiff Nucar Real Estate would not purchase the real estate and Plaintiff Nucar would not purchase the Dealerships' assets unless both remained satisfied through the completion of due diligence that the Dealerships' financial condition was as represented. Rothrock intended for Plaintiffs to make the same decisions based upon the same due diligence representations and warranties.

61.    In this regard, Plaintiff Nucar was a contracting party under the APA and Plaintiff Nucar Real Estate was a third-party beneficiary under the APA.

62.    Rothrock materially breached its contractual obligation to both Plaintiffs by falsely representing that Nucar had to add pack monies to the Dealerships' reported income figures in order to understand their true financial status. In fact, the pack monies had already been accounted for in income These funds had already been accounted for in the financial statements provided Plaintiffs, and now were being double counted.  Stated differently, Rothrock had grossly overstated the income and thereby the financial performance of the Dealerships.

63.    As a result of Rothrock's breach of its contractual obligations, Plaintiff Nucar was caused to purchase business assets materially inferior to what they were represented to be, and

Plaintiff Nucar Real Estate was caused to purchase commercial real estate materially less valuable than what its highest and best use would otherwise be.

64.     In accordance with the APA's dispute resolution procedures, Plaintiffs submitted a timely demand to Rothrock for indemnification and related relief, which remains unsatisfied. All conditions precedent prior to the commencement of suit have now been satisfied.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand, as an alternative to its claim for recission, that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for compensatory and consequential damages and attorney's fees and costs in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.

## COUNT III – INDEMNIFICATION

### (In the alternative to Recission)

65.     Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

66.     Because of Rothrock's breaches of its representations and warranties, Rothrock is obligated to indemnify and hold harmless Plaintiff Nucar against and from all "Losses" (as defined in the APA) incurred as a result of Rothrock's breaches.

67.     The Losses incurred by Plaintiff Nucar as a result of Rothrock's breaches of its representations and warranties include, without limitation, overpayment for the Dealerships' assets and the related real estate, the transactional costs associated with entering into and closing on the APA and P&S, losses incurred in the operation of the Dealerships and related real estate post-

closing of the APA, and the costs and expenses associated with investigating and addressing Rothrock's breaches of its representations and warranties and fraudulent conduct, including, without limitation, forensic investigation fees and costs and attorneys' fees and costs.

68.    Despite Plaintiff Nucar's legal entitlement to and demand for such indemnification, Rothrock refused and continues to refuse to provide indemnification.

69.    Rothrock's refusal to provide indemnification to Plaintiff Nucar has caused damage to Plaintiff Nucar in an amount to be proven at trial.

WHEREFORE, Plaintiff DCD NUCAR ALNI LLC respectfully demands judgment be entered in its favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for its Losses, including compensatory and consequential damages and attorney's fees and costs in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.

## COUNT IV – FRAUDULENT MISREPRESENTATION

70.    Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

71.    For the purpose of inducing others to purchase the Dealerships' business assets and related real estate, Rothrock intentionally and falsely represented the financial state of the Dealerships to its broker, who then published the materially false information into the Pitch Deck shared with Plaintiffs.

72.    Rothrock's financial information contained within the Pitch Deck was materially false.  Rothrock falsely inflated the pack monies reflected in the same that it purported to have

"added back" to income.  This false representation caused the Dealerships' overall financial picture, including annual net profit, to appear more positive than it was in reality.

73.     As a result of Rothrock's false representation in the Pitch Deck, Plaintiff Nucar was induced to enter into the APA for purchase of the Dealerships, and Plaintiff Nucar Real Estate was induced to enter into the P&S for purchase of the related real estate.

74.     After Plaintiff Nucar entered into the APA with Rothrock, Rothrock repeatedly informed Plaintiffs during due diligence that the pack monies taken into income were not reflected in the financial statements supplied to Plaintiffs for the 2020-2023 period under evaluation and needed to be added to the revenue/income for the Dealerships to understand the Dealerships true financial performance.  This misdirection was a bald-faced lie as the Dealerships' financial statements provided to Plaintiffs already reflected the pack monies taken into income, resulting in Plaintiffs having a distorted, grossly inaccurate, and overly profitable picture of the Dealerships' financial performance.

75.     Although Rothrock's actions violated express duties from the APA, its duty not to lie to and defraud Plaintiffs violated an independent societal obligation separate from any contract.

76.     As a result of Rothrock's continued intentionally false representations, Plaintiffs were induced not just to enter into the APA and P&S, but they were further induced to allow their due diligence rights (which provided them with the right to exit both agreements without completing the purchase) to lapse and to close on the purchase of the Dealerships' assets and related real estate.

77.     As a proximate result of Rothrock's actions, Plaintiffs reasonably and detrimentally relied on materially false financial information about the Dealerships, entered an agreement to purchase business assets (that Nucar otherwise never would have) that were financially inferior to

their understanding and intent, entered an agreement to purchase financially inferior real estate (that Nucar Real Estate otherwise never would have) to their understanding and intent, and thereby suffered losses in an estimated amount over seven figures.

78.     Rothrock's misrepresentations were intentional, calculated, and outrageous. It deceived Plaintiffs for the sole purpose of obtaining unearned profit in reckless indifference to the rights of others.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for compensatory and punitive damages in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.

## COUNT V – FRAUDULENT CONCEALMENT

79.     Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

80.     For the purpose of inducing others to purchase the Dealerships' business assets and related real estate, Rothrock intentionally and falsely represented the financial state of the Dealerships to its broker, who then published the materially false information into the Pitch Deck shared with Plaintiffs.

81.     Rothrock concealed that substantial pack monies were included in the income and adjusted net profit figures on the Pitch Deck when it stated the opposite was true.  This false representation caused the Dealerships' overall financial picture, including annual net profit, to appear more positive than it was in reality.

82.     As a result of Rothrock's false representation, Plaintiff Nucar was induced to enter into the APA for purchase of the Dealerships, and Plaintiff Nucar Real Estate was induced to enter into the P&S for purchase of the related real estate.

83.     After Plaintiff Nucar entered into the APA with Rothrock, Rothrock repeatedly informed Plaintiffs during due diligence that the pack monies taken into income were not reflected in the financial statements supplied to Plaintiffs for the 2020-2023 period under evaluation and needed to be added to the revenue/income for the Dealerships to understand the Dealerships' true financial performance.  This misdirection constituted a concealment as the Dealerships' financial statements provided to Plaintiffs already reflected the pack monies taken into income, resulting in Plaintiffs having a distorted, grossly inaccurate, and overly positive picture of the Dealerships' financial performance.

84.     During Plaintiff Nucar's investigation of the Dealerships assets both prior to the APA signing (when there was no contract) and prior to the close of due diligence (when there was a contract still terminable at Plaintiffs' will), it made repeated inquiries of Rothrock intended to better understand how Rothrock took pack monies into income and the overall financial picture for the Dealerships, including their profits.

85.     In response, and in a calculated effort to thwart a more searching inquiry, Rothrock informed both its broker (prior to the APA being signed) and Plaintiffs directly (during due diligence under the APA) that pack monies were not taken into income by Rothrock until the 13th month and that all financial information supplied to Plaintiffs failed to account for the same such that the pack monies needed to be added to the income and revenue figures supplied in order for Plaintiffs to understand the true financial picture for the Dealerships.

86.    But in truth, the 13th month statements did not reconcile anything; they reflected pack monies as income to the Dealerships that had already been taken into income on a rolling basis and already included in the financial statements prepared throughout the fiscal year that were shared with Plaintiffs during due diligence.

87.    Although Rothrock's actions violated express duties from the APA, its duty not to lie to and defraud Plaintiffs violated an independent societal obligation separate from any contract.

88.    As a result of Rothrock's continued concealment of the true income and profits of the Dealerships, Plaintiffs were induced not just to enter into the APA and P&S, but they were further induced to allow their due diligence rights (to exit both agreements without completing purchase and incurring the losses described herein) to lapse and to close on the purchase of the Dealerships and related real estate.

89.    As a proximate result of Rothrock's actions, Plaintiffs reasonably and detrimentally relied on materially false financial information about the Dealerships, entered an agreement to purchase business assets (that Nucar otherwise never would have) that were financially inferior to their understanding and intent, entered an agreement to purchase financially inferior real estate (that Nucar Real Estate otherwise never would have) to their understanding and intent, and thereby suffered losses in an estimated amount between seven and eight figures.

90.    Rothrock's concealment was intentional, calculated, and outrageous. It deceived Plaintiffs for the sole purpose of obtaining unearned profit in reckless indifference to the rights of others.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the

Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate

Holdings, LLC; and Rock Real Estate Family Partners, LP for compensatory and punitive damages

in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.

## COUNT VI – FRAUDULENT NONDISCLOSURE

91.     Plaintiffs incorporate the above-stated averments as though they were repeated

herein at length.

92.     Rothrock's financial information contained within the Pitch Deck was materially

false.  Rothrock fraudulently failed to disclose that the income and profit figures already included

pack monies taken into income.  This false representation caused the Dealerships' overall financial

picture, including annual net profit, to appear more positive than it was in reality.

93.     As a result of Rothrock's nondisclosure, Plaintiff Nucar was induced to enter into

the APA for purchase of the Dealerships' assets, and Plaintiff Nucar Real Estate was induced to

enter into the P&S for purchase of the related real estate.

94.     During Plaintiff Nucar's investigation of the Dealerships' assets both prior to the

APA signing (when there was no contract) and prior to the close of due diligence (when there was

a contract still terminable at Plaintiffs' will), it made repeated inquiries of Rothrock intended to

better understand how Rothrock took pack monies into income and the overall financial picture

for the Dealerships, including their profits.

95.     In response, and in a calculated effort to thwart a more searching inquiry, Rothrock

informed both its broker (prior to the APA being signed) and Plaintiffs directly (during due

diligence under the APA) that pack monies were not taken into income by Rothrock until the 13th

month and that all financial information supplied to Plaintiffs failed to account for the same such

that the pack monies needed to be added to the income and revenue figures supplied in order for Plaintiffs to understand the true financial picture for the Dealerships.

96.    But in truth, the 13th month statements did not reconcile anything; they reflected pack monies as income to the Dealerships that had already been taken into income on a rolling basis and already included in the financial statements prepared throughout the fiscal year that were shared with Plaintiffs during due diligence.

97.    At all pertinent times after execution of the APA, Rothrock knew that it was subject to a written warranty and guaranty on which Plaintiff Nucar was relying, promising that all information disclosed in due diligence was not only literally true, but was complete so as not to be misleading.

98.    By failing to disclose to Plaintiffs that they were supplied overstated income and profit figures for the Dealerships, Rothrock took advantage of the trust contractually instilled on it, and misled Plaintiff to its detriment.

99.    At all pertinent times before and after execution of the APA, Rothrock knew that it had made repeated representations that were materially misleading and that failed to disclose the true financial status of the Dealerships. It had an obligation to correct its misleading representations and did not.

100.    At all pertinent times before and after execution of the APA, Rothrock knew that its practices and instruction to Plaintiffs to add pack monies to income and revenue that were already reflected in the data provided Plaintiffs grossly distorted the Dealerships' reported net income and overall financial picture, facts basic to the business asset and real estate transactions. Rothrock also knew that Plaintiffs were entering into, and subsequently closing upon, both transactions while under a materially false understanding of the Dealerships' financial condition.

101.    Although Rothrock's actions violated express duties from the APA, its duty not to lie to and defraud Plaintiffs violated an independent societal obligation separate from any contract.

102.    As a result of Rothrock's continued intentional false representations, Plaintiffs were induced not just to enter into the APA and P&S, but they were further induced to allow their due diligence rights (to exit both agreements without completing purchase and incurring the losses described herein) to lapse to close on the purchase of the Dealerships and related real estate.

103.    As a proximate result of Rothrock's actions, Plaintiffs reasonably and detrimentally relied on materially false financial information about the Dealerships, entered an agreement to purchase business assets (that Nucar otherwise never would have) that were financially inferior to their understanding and intent, entered an agreement to purchase financially inferior real estate (that Nucar Real Estate otherwise never would have) to their understanding and intent, and thereby suffered losses in an estimated amount between seven and eight figures.

104.    Rothrock's misrepresentations were intentional, calculated, and outrageous. It deceived Plaintiffs for the sole purpose of obtaining unearned profit in reckless indifference to the rights of others.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for compensatory and punitive damages in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.

Date: July 30, 2025

Respectfully submitted,

/s/ Travis A. Gold
Travis A. Gold, Esq.
Atty. ID No. 316765
Law Offices of Gold & Gold
237 South York Road
Hatboro, PA 19040
(p) 215-672-2458
(f) 215-672-9460
travis@hatborolawyer.com

/s/ William E. Gamgort
William E. Gamgort, Esq.
*Pro Hac Vice Forthcoming*
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(p) 302-576-3267
wgamgort@ycst.com