**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DCD NUCAR ALNI LLC et al.,, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case No. 5:25-cv-04327-JFL |
| | : | |
| v. | : | |
| | : | |
| ROTHROCK MOTOR SALES, INC. *et al.*, | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

The signature block:

Morton R. Branzburg (Pa. I.D. No. 24477)
Ryan M. Moore (Pa. I.D. No. 314821)
**KLEHR HARRISON HARVEY**
**BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Phone: (215) 569-2700
Fax: (215) 568-6603
mbranzburg@klehr.com
rmoore@klehr.com

Dated: August 25, 2025                    *Counsel for Defendants*

## TABLE OF CONTENTS

**Page**

STATEMENT OF ALLEGED FACTS ............................................................................ 1

I.    PLAINTIFFS DECIDED TO PURCHASE THE DEALERSHIPS BASED ON
INFORMATION IN THE PITCH DECK PROVIDED BY THE BROKER. ......................... 1

II.   THE PARTIES NEGOTIATED AND EXECUTED THE APA AND PSA AND
PLAINTIFFS CONDUCTED DUE DILIGENCE. ..................................................... 3

III.  THE TRANSACTION CLOSED AND PLAINTIFFS PURCHASED THE
DEALERSHIPS. ............................................................................................ 5

IV.   PLAINTIFFS STARTED TO QUESTION INFORMATION PROVIDED PRE-
CLOSING REGARDING PACK MONIES ............................................................ 6

V.    PLAINTIFFS THREATENED AND THEN FILED SUIT. ........................................ 8

STATEMENT OF QUESTIONS INVOLVED ............................................................... 9

SUMMARY OF ARGUMENT ................................................................................ 10

LEGAL STANDARDS ........................................................................................ 11

ARGUMENT .................................................................................................... 13

I.    THE COMPLAINT FAILS TO PLEAD SUFFICIENTLY A CAUSE OF ACTION
FOR RESCISSION. ....................................................................................... 13

A.   Pennsylvania Does Not Recognize An Independent Cause Of Action For Rescission. 14

B.   The Rescission Claim Is Barred By Pennsylvania's Parol Evidence Rule. .......... 14

C.   The Complaint Does Not Plead Adequately The Extraordinary Circumstances
Warranting Rescission. ............................................................................... 16

II.   THE COMPLAINT FAILS TO PLEAD SUFFICIENTLY A CAUSE OF ACTION
FOR BREACH OF CONTRACT. ...................................................................... 17

III.  THE COMPLAINT FAILS TO PLEAD SUFFICIENTLY A CAUSE OF ACTION
FOR INDEMNIFICATION. ............................................................................. 19

A.   The Complaint Does Not Plead Sufficiently That This Dispute Falls Within The Scope
Of The Parties' Indemnification Agreement. .................................................... 22

B.   Plaintiffs' Indemnity Claim Is Not Yet Ripe For Adjudication. .......................... 22

IV.   THE COMPLAINT FAILS TO PLEAD ADEQUATELY A CAUSE OF ACTION
FOR FRAUDULENT MISREPRESENTATION. ..................................................... 23

A.   The Complaint Does Not Allege Specifically Which Defendants Made The Alleged
Misrepresentations. .................................................................................... 24

B.   The Complaint Fails To Allege Specifically Or Adequately A Fraudulent
Misrepresentation Claim. ............................................................................. 24

i

V.   THE COMPLAINT FAILS TO PLEAD ADEQUATELY A CAUSE OF ACTION FOR FRAUDULENT CONCEALMENT...............................................................27

VI.  THE COMPLAINT FAILS TO PLEAD ADEQUATELY A CAUSE OF ACTION FOR FRAUDULENT NONDISCLOSURE..........................................................28

CONCLUSION                                                                          29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abria Med. Labs. LLC v. Meritain Health, Inc.*,
2025 WL 920260 (E.D. Pa. Mar. 26, 2025)..........................................................................22

*Atl. Hldgs., Ltd. v. Apollo Metals, Ltd.*,
263 F. Supp. 3d 526 (E.D. Pa. 2017) ..................................................................................12

*Bartol v. Barrowclough*,
251 F. Supp. 3d 855 (E.D. Pa. 2017) .............................................................................11, 22

*U.S. ex rel. Bennett v. Bayer Corp.*,
2022 WL 970219 (D.N.J. Mar. 31, 2022)............................................................................11

*Berardine v. Weiner*,
198 F. Supp. 3d 439 (E.D. Pa. 2016) .............................................................................13, 14

*Boardakan Rest. LLC v. Gordon Grp. Hldgs., LLC*,
2016 WL 6213035 (E.D. Pa. Oct. 24, 2016)........................................................................24

*U.S. ex rel Bookwalter v. UPMC*,
946 F.3d 162 (3d Cir. 2019)................................................................................................10

*Bucci v. Wachovia Bank, N.A.*,
591 F. Supp. 2d 773 (E.D. Pa. 2008)...................................................................................27

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)..............................................................................................10

*Cabot v. Jamie Rec. Co.*,
1999 WL 236737 (E.D. Pa. Apr. 19, 1999) .........................................................................14

*Charlton v. Garb*,
2010 WL 653155 (E.D. Pa. Feb. 19, 2010) .........................................................................14

*Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*,
94 F. Supp. 2d 589 (E.D. Pa. 1999)...............................................................................12, 13

*Crestar Mortg. Corp. v. Peoples Mortg. Co.*,
818 F. Supp. 816 (E.D. Pa. 1993)........................................................................................20

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007)...........................................................................................11, 22

*Fulton Bank, N.A. v. UBS Sec., LLC*,
    2011 WL 5386376 (E.D. Pa. Nov. 7, 2011) ...............................................................12

*Fulton Fin. Advisors, Nat'l Assoc. v. NatCity Investments, Inc.*,
    2013 WL 5635977 (E.D. Pa. Oct. 15, 2013) ..............................................................12

*Garrisons Printing Co. v. Steven Mandarino Fine Arts, Inc.*,
    1986 WL 13837 (E.D. Pa. Dec. 5, 1986) ....................................................................11

*Gnagey Gas & Oil Co., Inc. v. Penna. Underground Storage Tank
    Indemnification Fund*,
    82 A.3d 485 (Pa. Commw. Ct. 2013) ..........................................................................26

*Grande v. Starbucks Corp.*,
    2019 WL 1455445 (E.D. Pa. Apr. 2, 2019) ..........................................................11, 22

*Invensys Inc. v. Am. Mfg. Corp.*,
    2005 WL 600297 (E.D. Pa. Mar. 15, 2005) ...............................................................19

*IU N. Am., Inc. v. Gage Co.*,
    2002 WL 1277327 (E.D. Pa. June 4, 2002) ...............................................................19

*K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc.*,
    689 F. Supp. 3d 35 (E.D. Pa. Aug. 30, 2023) ...........................................................23

*Kushnir v. Aviva Life & Annuity Co.*,
    2013 WL 4479196 (E.D. Pa. Aug. 22, 2013) .............................................................12

*Lind v. Jones, Lang LaSalle Am., Inc.*,
    135 F. Supp. 2d 616 (E.D. Pa. 2001) .........................................................................24

*Lutz v. Portfolio Recovery Assocs.*,
    49 F.4th 323 (3d Cir. 2022) ........................................................................................10

*Marcum v. Columbia Gas Transmission, LLC*,
    423 F. Supp. 3d 115 (E.D. Pa. 2019) .........................................................................26

*McClure v. Deerland Corp.*,
    585 A.2d 19 (Pa. Super. 1991) ...................................................................................19

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Malone Middleman, P.C.*,
    137 A.3d 1247 (Pa. 2016) ...........................................................................................16

*Mohn v. Cardona*,
    2022 WL 704646 (E.D. Pa. Mar. 9, 2022) .................................................................27

*N. Penn Towns, LP v. Concert Golf Partners, LLC*,
    2022 WL 2985632 (E.D. Pa. July 28, 2022) ..............................................................27

*N. Penn Towns, LP v. Concert Golf Partners, LLC*,
554 F. Supp. 3d 665 (E.D. Pa. Aug. 12, 2021) ........................................................24

*Ogontz Fire Co. v. Cheltenham Twp.*,
2025 WL 2004692 (E.D. Pa. July 17, 2025)......................................................19, 20

*Pallante v. Those Certain Underwriters at Lloyd's*,
2018 WL 3995949 (E.D. Pa. 2018) ........................................................................12

*Prof. Sys. Corp. v. Opex Postal Tech.*,
2006 WL 573798 (E.D. Pa. Mar. 8, 2006)..............................................................12

*Redick v. Kraft, Inc.*,
745 F. Supp. 296 (E.D. Pa. 1990) ..........................................................................24

*Stein v. Matheson*,
539 F. Supp. 3d 463 (E.D. Pa. 2021) ......................................................................15

*Team Biondi, LLC v. Navistar, Inc.*,
665 F. Supp. 3d 633 (M.D. Pa. 2023) ..............................................................26, 27

*Wilson v. Donegal Mut. Ins. Co.*,
598 A.2d 1310 (Pa. Super. Ct. 1991) ...............................................................25, 26

**Other Authorities**

Federal Rule of Civil Procedure 8 ...............................................................................11

Federal Rule of Civil Procedure 9 .......................................................................10, 11

Federal Rule of Civil Procedure 12 .......................................................................9, 10

Defendants Rothrock Motor Sales, Inc., David B. Rothrock, individually and on behalf of the Estate of Bruce L. Rothrock, Sr., Bruce L. Rothrock, Jr., Dean A. Rothrock, Rock Real Estate Holdings, LLC, and Rock Real Estate Family Partners, LP (collectively, "**Defendants**"[1]), through their undersigned counsel, submit this Memorandum of Law in Support of their Motion to Dismiss ("**Motion**") the Complaint[2] filed by Plaintiffs DCD Nucar Alani LLC, Individually and as successor by merger to DCD Nucar ALCD, LLC, and DCD RE Plaza Lane LLC (collectively, "**Plaintiffs**").

## STATEMENT OF ALLEGED FACTS

### I.    PLAINTIFFS DECIDED TO PURCHASE THE DEALERSHIPS BASED ON INFORMATION IN THE PITCH DECK PROVIDED BY THE BROKER.

Described as "Lehigh Valley motorists' most trusted name in automotive," Defendants have spent over sixty years owning and operating car dealerships in Pennsylvania.  Compl. at 1 & ¶¶ 16, 18.  In October 2023, Defendants were engaged in a process with a "well-known broker operating in the automotive dealer space" (the "**Broker**")[3] to sell two dealerships they owned and operated in Allentown, Pennsylvania—specifically, a Nissan dealership and a Chrysler Dodge Jeep and Ram ("**CDJR**") dealership (the "**Dealerships**").  *Id.* at 1–2 & ¶ 14.

Plaintiffs are part of a family run business that "has operated automobile dealerships for over 40 years," which purportedly "has grown to be one of the largest automotive groups in New

---

[1] The Complaint refers to the Defendants collectively as "Rothrock."  To avoid potential confusion between the many similarly named parties, this Memorandum of Law uses the term "Defendants."

[2] Citations and references to the Complaint in this Memorandum of Law are cited as "**Compl.**" For purposes of Defendants' Motion and this Memorandum of Law in Support, Defendant treat the allegations in the Complaint as true, to the extent those allegations are entitled to such a presumption and not otherwise contradicted by the relevant contract and documents referenced in the Complaint.  Defendants expressly reserve the right to deny, challenge, or otherwise contest any fact as alleged by Plaintiffs in further proceedings in this action.

[3] The Complaint does not allege the identity of the Broker.

England." *Id.* at 1–2.  In October 2023, the Broker approached certain representatives of Plaintiffs

about purchasing the Dealerships from Defendants.  *Id.* ¶ 14.

After Plaintiffs executed a non-disclosure agreement with the Broker, the Broker provided

Plaintiffs "with a pitch deck containing financial information concerning the Dealerships" (the

"**Pitch Deck**").  *Id.* ¶ 15.  Among other things, the Pitch Deck allegedly contained:

- Information on "specific revenue, expense, and net profit figures for the Dealerships, combined, for the years 2020 through the third quarter of 2023," *id.* ¶ 20;

- information "showing" Defendants "characterized a significant fraction of the Dealerships' annual net profits as 'Add-Backs,' and that by far the largest 'Add-Back' component in every year was a 'Pack Adjustment,'" *id.* ¶ 21; and

- information on "'Profit Performance,' which reported financial figures, including adjusted profit figures, for the Dealerships, combined, for periods back to calendar year 2020," *id.* ¶ 22.

The "Profit Performance pages" in the Pitch Deck also allegedly included "a row titled

'Pack Adjustments.'  *Id.* ¶ 24.  The Complaint alleges that:

> [i]n the automotive industry, a "pack" is a predetermined expense added by a dealer to the invoice price of a vehicle that is intended to account for overhead expenses such as rent, advertising, and vehicle reconditioning, and it reduces the revenue generated by the vehicle before a salesperson's commission is calculated.  Most dealerships, including those operated by [Defendants], utilize multiple "packs." Pack monies are also taken into income by a dealership and customarily "earned" and effective at the time a vehicle is sold.

*Id.* ¶ 24.

The Pitch Deck also purportedly contained the following language:

> (i) the information contained herein, or the accuracy or completeness thereof, including, without limitation, the income or expenses for the subject property or business […] or the financial condition or prospects of any business, or (ii) any action taken or not taken in reliance thereon.  [Broker] shall not have any liability to the recipient of this Executive Summary or its representatives that may be based on such information, errors therein or any omissions therefrom.  All potential buyers and tenants disclaim reliance on any information contained in this Executive Summary and shall be responsible for undertaking any due diligence investigation to verify information set forth herein.

*Id.* ¶ 25 (alternations in original).  Plaintiffs purportedly read this language as indicating that "the Pitch Deck contained data compiled and supplied exclusively by Defendants," considering the Broker "a mere messenger."  *Id.*[4]

Despite "not blindly accept[ing] the Pitch Deck at face value," upon review, "Plaintiffs decided that the Dealerships presented a ***potentially*** attractive opportunity."  *Id.* ¶ 26 (emphasis in original).  To confirm their belief, they "inquired" about Defendants' "treatment of pack monies for the Dealerships."  *Id.* ¶ 27.  The Broker (not Defendants) informed Plaintiffs that Defendants "took . . . pack monies into income" via Defendants' "W2 and or [*sic*] dealership income on the 13ᵗʰ month stmt."  *Id.* ¶ 27.  Plaintiffs purportedly took that to mean that "the adjusted revenue and income figures supplied" by the Broker in the Pitch Deck "did ***not*** include the pack monies in income."  *Id.* (emphasis in original).  Based on the Pitch Deck and these statements from the Broker,[5] Plaintiffs were "[s]atisfied" that a purchase of the Dealerships was "an attractive expansion opportunity."  *Id.* ¶ 28.

## II.    THE PARTIES NEGOTIATED AND EXECUTED THE APA AND PSA AND PLAINTIFFS CONDUCTED DUE DILIGENCE.

Based on their review of the information provided by the Broker, Plaintiffs negotiated and entered into an Asset Purchase Agreement ("**APA**") with Defendants for the sale and purchase of the assets of the Dealerships and an Agreement of Sale ("**PSA**") for the sale and purchase of the real estate upon which the Dealerships operated.  *See id.* ¶¶ 27-28.  Both the APA and PSA contained "appropriate due diligence protections."  *Id.* ¶ 28. The APA and PSA were "finalized and executed on January 29, 2024," after which "the contractually-prescribed due diligence

---

[4] Plaintiffs did not attach the Pitch Deck to their Complaint as an exhibit.

[5] Plaintiffs' Complaint contradicts itself as to exactly who made the statements about Defendants' treatment of pack monies.  In Paragraph 27, the Complaint alleged that it was the Broker who made such statements.  Compl. ¶ 27. *But see id.* ¶ 28.

began." *Id.* ¶ 29.

The scope of Plaintiffs' "due diligence protections" were defined specifically in the relevant agreements. Exhibit 1 § 10.14.[6] In relevant part, the APA provided that, for a specific period of time, Defendants permitted Plaintiffs to conduct a "reasonable investigation" of the Dealerships' "financial and operating data," which included Plaintiffs' "access" to Defendants' CPA. *Id.*

The Complaint alleges that Plaintiffs were "in regular communication with" Defendants and the Broker during the due diligence period, which lasted from January to April 2024, including communications specifically "about the financial information for the Dealerships contained in the Pitch Deck and in financial spreadsheets and documentation supplied during due diligence." Compl. ¶ 32. Purportedly, "[o]f particular and continuing concern and focus" for Plaintiffs was Defendants' "treatment of pack monies." *Id.*

The Complaint alleges the following exchanges occurred between Plaintiffs and Defendants during the diligence period with respect to Defendants' "treatment of pack monies":

- "[o]n January 6, 2024," an agent of Plaintiffs "texted David [Rothrock] asking him to explain briefly the packs that are on the add back sheet that [the Broker] sent" Plaintiffs, because Plaintiffs were "[j]ust trying to better understand that line," *id.* ¶ 33 (internal quotation mark omitted);

- "on or about February 9, 2024," Plaintiffs allegedly were "given access to a 'data room' created by [Defendants] that contained certain financial information for the Dealerships," which Plaintiffs purportedly interpreted "to be consistent with the Pitch Deck," *id.* ¶ 34;

- "[o]n or about February 13, 2024," Defendants provided Plaintiffs "with a document entitled Inventory Pack Listing which detailed all the pack monies that" Defendants "utilized and how and where they were reflected in the Dealerships' financial statements," *id.* ¶ 35;

- "[o]n February 18, 2024," a representative of Plaintiffs sent Defendants "a list of

---

[6] Although not attached to Plaintiffs' Complaint, a true and correct copy of the APA is attached hereto as **Exhibit 1**.

questions about the financials [Defendants] had provided and specifically asked 'Where is the statement's 1.5m [($1,500,000)] of pack adjustment going?' to which David [Rothrock] responded 'These amounts are added to the cost of the vehicles and set up as liabilities on the balance sheet in the previously indicated accounts"; that "[t]he pack adjustments add back represents the unused portion of these packs that are remaining on the balance sheet"; and that "[t]ese amounts are then adjusted into income in the 13th month each year for tax reporting purposes,'" *id.* ¶ 36 (second alteration in original);

- "[d]uring the due diligence period, David [Rothrock]" allegedly "repeatedly told" a representative of Plaintiffs "both orally and in writing, that the pack monies must be added back to adjusted net income figures provided to" Plaintiffs "to understand the 'true' income and profit of the Dealerships," which the Complaint alleges "turn[ed] out" to be "patently false," *id.* ¶ 37;

- "[o]n February 27, 2024," Defendants provided Plaintiffs "with a spreadsheet entitled 'Vehicle Packs' that detailed all vehicle packs that" Defendants "had used since 2022 and the amounts set for each as specific line items," which "explained where" Defendants "had included each pack line item on its balance sheet and indicated that the pack monies were taken into income in a 13th month statement (i.e. [*sic*] the pack monies are not reflected in income in the monthly financial statements [Plaintiffs] received)," *id.* ¶ 38; and

- "[o]n March 11, 2024," a representative of Plaintiffs "asked David [Rothrock] to confirm that [Plaintiffs] needed to add the pack monies, reflected in the February 27th spreadsheet, to the adjusted net income data [Defendants] had supplied for fiscal year 2022 to have an accurate picture of the Dealerships' income for 2022," which "David [Rothrock] quickly confirmed"; and, allegedly, that confirmation, "[c]onsistent with the prior explanations from David [Rothrock]," caused Plaintiffs to understand that "pack monies were not reflected in income in the financial statements [Plaintiffs] received during due diligence and were only accounted for in [Defendants'] 13th month financial statements," *id.* ¶ 39.

The Complaint does not allege or identify any other conversations, statements, or representations made by Defendants to Plaintiffs regarding how Defendants managed, allocated, and accounted for pack monies.

## III.    THE TRANSACTION CLOSED AND PLAINTIFFS PURCHASED THE DEALERSHIPS.

The APA and PSA closed on May 1, 2024.  *Id.* ¶ 40.  Pursuant to Section 19(b)(ii)(E) of the APA, Defendants delivered to Plaintiffs at closing a Certificate of Seller and Seller Parties (Representations and Warranties), which stated, among other things, that Defendants certified that:

[a]ll representations and warranties of Seller [*i.e.*, Defendants] contained in Section 8 of the [APA] were true and correct in all material respects when made, and are true and correct in all material respects on and as of the date hereof as if made as of the date hereof (except in each case for those representations and warranties which address matters only as of a particular date, which representations and warranties are true and correct in all material respects as of such particular date).

Exhibit 2 ¶ 2.[7]

Section 8 of the APA contains the Representations and Warranties of Seller, which include, among others, that

[n]o representation or warranty or other statement made by Seller [*i.e.*, Defendants] in [the APA], nor any written statement, schedule or exhibit furnished or to be furnished by or on behalf of Seller [*i.e.*, Defendants] pursuant to [the APA], nor any document or certificate delivered to Buyer [*i.e.*, Plaintiffs] pursuant to [the APA], contains or shall contain any untrue statement of a material fact or omits or shall omit to state a material fact necessary to make the statements contained therein not misleading.

Ex. 1 § 8.23. None of the schedules or disclosure statements delivered with the APA dealt with, involved, or referenced pack monies or Defendants' allocation, accounting, or management of pack monies, with respect to calculating the Dealerships' revenue or profit or otherwise. *See* Ex. 1. Nor did any of the certificates delivered to Plaintiffs by Defendants pursuant to the APA. *See* Exhibit 3.[8]

## IV.    PLAINTIFFS STARTED TO QUESTION INFORMATION PROVIDED PRE-CLOSING REGARDING PACK MONIES.

After the closing, Plaintiffs allegedly "became alarmed after the Dealerships' profits were significantly less than expected," purportedly based on their "project[ions] from the data provided by [Defendants] pre-closing." Compl. ¶ 41. Plaintiffs thus had their "accounting team review[]

---

[7] Although not attached to the Complaint, a true and correct copy of the Certificate of Seller and Seller Parties is attached hereto as **Exhibit 2**.

[8] Although not attached to the Complaint, a true and correct copy of the other certificate delivered by Defendants to Plaintiffs pursuant to the APA, in addition to the Certificate of Seller and Seller Parties, is attached hereto of **Exhibit 3**.

general ledger entries for the Dealerships for a limited pre-closing period," purportedly "which had not been provided to [Plaintiffs] pre-closing"—although the Complaint does not allege that Plaintiffs asked to review such information during the due diligence period.  *Id.* ¶ 42.  The general ledger entries Plaintiffs' accountants purportedly reviewed "belied [Defendants'] prior representations that [they] did not take pack monies into income until the 13th month and that the same needed to be added to the adjusted revenue figures for the Dealerships . . . to understand the true income for the Dealerships."  *Id.*  By purportedly "misrepresenting this fact," Defendants allegedly "misled" Plaintiffs "into overcounting the pack monies in the Dealerships' revenue."  *Id.*

Plaintiffs later engaged Moss Adams—purportedly "a public accounting firm with expertise relating to automotive dealerships"—"to conduct a forensic review of the financial statements, general ledgers, and other financial data prepared by [Defendants] for the Dealerships prior to the sale."  *Id.* ¶ 43.  The scope of Moss Adams's review allegedly included both "financial data supplied" to Plaintiffs by Defendants pre-closing and additional "documentation and data" the Complaint alleges was not disclosed to Plaintiffs pre-closing (although the Complaint does not allege Plaintiffs requested but were not provided any "documentation" or "data" during the due diligence period).  *Id.*  Allegedly, "Moss Adams's investigation uncovered that the financial records supplied" to Plaintiffs pre-closing "by and/or at the direction of" Defendants "already accounted for the majority of pack monies in the Dealership's [*sic*] income for all years under consideration during due diligence."  *Id.* ¶ 44.  The Complaint thus alleges that Defendants' "repeated statements" to Plaintiffs "that the pack monies needed to be added to the income figures provided to understand the true financial picture of the Dealerships were materially false and misleading" and "caused" Plaintiffs "to have a grossly inflated and inaccurate understanding of the income and profits for the Dealerships."  *Id.*

The Complaint further alleges that "[i]t is inconceivable that [Defendants] would accidentally misrepresent" the Dealerships' "income and profit in this manner," suggesting that "[t]he only conceivable explanation is that [Defendants] intentionally misrepresented [their] treatment of pack monies to deceive [Plaintiffs] into placing a higher value on the Dealerships and the connected real estate than [Plaintiffs] otherwise would have." *Id.* ¶ 45. The Complaint thus alleges that Defendants' purported "overstatements of income of the Dealerships induced" Plaintiffs "to enter into and close on the transactions . . . on false pretenses and with a grossly inaccurate understanding of the financial picture of the Dealerships"; and that Plaintiffs "would have never entered into the APA" and PSA "and purchased the Dealerships and related real estate . . . but for the false and misleading statements and information regarding the Dealerships' income and profitability provided to them by" Defendants. *Id.* ¶ 47.

## V.    PLAINTIFFS THREATENED AND THEN FILED SUIT.

On April 15, 2025, pursuant to Section 17.4 of the APA,[9] Plaintiffs, through counsel, sent Defendants a notice of claims and a demand for indemnity based on the same dispute articulated in the Complaint (the "**Notice Letter**").[10]   On May 13, 2025, Defendants, through counsel, responded to the Notice Letter, disputed its factual assertions and legal conclusions, and requested that Plaintiffs "make immediately available the information upon which" they "relied and that

---

[9] Section 17.4 of the APA defines the procedure pursuant to which the parties thereto may seek to pursue claims for indemnification.  *See* Ex. 1 §§ 17.1–17.4.  Among other things, Section 17.4 requires that the party making a claim for indemnification give written notice of its claims; permit the responding party thirty (30) days to investigate those claims; and, in furtherance of such an investigation, make available "the information relied upon" in asserting those claims.  *Id.* § 17.4. If those prerequisites are met, and the responding party objects to the claims (or the parties cannot agree on a resolution of their dispute) within thirty (30) days after the prescribed investigation period, the party demanding indemnification may "be free to pursue any rights and remedies under [the APA], at law, or in equity with respect to any such unresolved dispute." *Id.*

[10] A true and correct copy of the Notice Letter is attached hereto as **Exhibit 4**.

purportedly substantiate[d] their supposed claims" (the "**Response Letter**").[11]   On June 4, 2025, Plaintiffs, through counsel, responded, and provided access to certain materials purportedly constituting "all information upon which" Plaintiffs "relied and that purportedly substantiate[d] their supposed claims."[12]

Although the disclosure made by Plaintiffs was voluminous, it did not include a disclosure of the methodology, processes, and assumptions used by Plaintiffs, their accounting professionals, or Moss Adams in conducting the analyses underlying the assertions made in the Claim Notice. Defendants requested that information, again pursuant to Section 17.4 of the APA, on June 19, 2025.[13]   On June 21, 2025, Plaintiffs provided additional information with respect to Moss Adams's analysis.  *See* Ex. 7.

On July 3, 2025, Defendants responded and formally denied the claims asserted in the Claim Notice (the "**Denial Letter**"), specifically pointing to several irregularities and mistakes made in Plaintiffs' analysis, which Plaintiffs and their accountants identified from the disclosures made by Plaintiffs.[14]   On July 16, 2025, Plaintiffs responded with a revised demand adjusting their analysis based on some, but not all, of the irregularities identified by Defendants in their Denial Letter (the "**Revised Demand Notice**").[15]

While the parties were discussing whether it would be fruitful to engage in discussions intended to resolve their dispute (as prescribed by Section 17.4 of the APA), Plaintiffs filed the Complaint and initiated this action on July 30, 2025.

## STATEMENT OF QUESTIONS INVOLVED

---

[11] A true and correct copy of the Response Letter is attached hereto as **Exhibit 5**.
[12] A true and correct copy of the June 4 Letter is attached hereto as **Exhibit 6**.
[13] A true and correct copy of the relevant email correspondence is attached hereto as **Exhibit 7**.
[14] A true and correct copy of the Denial Letter is attached hereto as **Exhibit 8**.
[15] A true and correct copy of the Revised Demand Notice is attached hereto as **Exhibit 9**.

Whether this Court should grant Defendants' Motion and dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

***Suggested Answer:  Yes***

## SUMMARY OF ARGUMENT

As described at length below, Plaintiffs' Complaint should be dismissed for failure to state a claim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Specifically, the Complaint fails to assert sufficient allegations to establish plausibly a single of its purported causes of action.

***First***, with respect to its purported cause of action for rescission, the Complaint ignores that Pennsylvania law does not recognize such a stand-alone claim, and entirely fails to account for the fact that the Pennsylvania parol evidence rule bars the relief sought—notwithstanding the fact that the Complaint is devoid wholly of sufficient allegations establishing the extraordinary circumstances that would justify a complete unwinding of the relevant transactions at issue in this dispute.

***Second***, the Complaint's purported cause of action for breach of contract fares no better. Nowhere in the Complaint is it alleged that Defendants breached a specific contractual obligation that they owed Plaintiffs.  To the contrary, Defendants upheld their end of the bargain and fulfilled each of the contractual duties imposed upon them by the relevant contracts.  At bottom, this is a case about buyers' remorse, where Plaintiffs regret purchasing certain assets and real estate from Defendants after a months'-long, arm's-length negotiation and due diligence process.

***Third***, the Complaint's purported cause of action for indemnification puts the cart in front of the horse.  Not only is the dispute subject of the Complaint well outside of the scope of the parties' indemnification agreement—given that Plaintiffs have yet to incur or make any actual payment as a result of their alleged losses—it is not yet ripe for adjudication.  Moreover, Plaintiffs

did not comply with the specific procedures outlined in the parties' indemnification agreement before filing suit.

**Fourth**, the Complaint's fraud-based claims suffer from irreconcilable defects under both Rules 9(b) and 12(b)(6). Specifically, because each of the contracts at issue are integrated documents, the Complaint's reliance on extra-contractual statements, conversations, and representations preclude its fraud claims under Pennsylvania law. But, even setting that aside, the Complaint's fraud-based claims are supported by insufficient allegations that in no way meet the standards of Rule 9(b), and entirely fail to give the required notice of the underlying circumstances sufficient for Defendants to prepare a defense. Indeed, with respect to the fraudulent concealment and fraudulent nondisclosure claims, the Complaint fails to include any allegations establishing that Defendants had the requisite duties to Plaintiffs to support such claims.

At bottom, the dispute articulated in the Complaint is nothing more than a case of a disgruntled buyer regretful that it closed on an arms'-length transaction. But, as alleged in the Complaint, Plaintiffs were sophisticated industry actors that knew (or should have known) how to protect themselves and evaluate the business opportunity in which they were engaged with Defendants. That the opportunity did not turn out to be as lucrative as Plaintiffs' hoped is no reason to impose liability or blame on Defendants. For these reasons, and the reasons discussed below, Defendants' Motion should be granted and this Court should dismiss the Complaint.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts follow a three-step process, involving (1) "an articulation of the elements of the claim[s]"; (2) a thorough review of the pleading and its allegations, which "disregard[s] any formulaic recitation of the elements of a claim," "legal conclusion[s]," and "allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and the factual"; and an evaluation of "the

plausibility of the remaining allegations," which "involves assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor".[16] *See Lutz v. Portfolio Recovery Assocs.*, 49 F.4th 323, 327–28 (3d Cir. 2022) (cleaned up).  Where "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)).

Furthermore, where a pleading contains claims sounding in fraud, Federal Rule of Civil Procedure 9 requires that the plaintiff "state with particularity the circumstances constituting [that] fraud." *U.S. ex rel Bookwalter v. UPMC*, 946 F.3d 162, 168 (3d Cir. 2019) (quoting Fed. R. Civ. P. 9(b)). This particularity requirement necessitates more than "[a] mere inference of illegality"— it "requires a plaintiff to allege all of the essential factual background that would accompany the first paragraph of any newspaper story": "the who, what, when, where, and how of the events at issue." *Id.* at 176 (cleaned up).  At bottom, to comply with Rule 9, fraud allegations "must state the circumstances . . . with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (cleaned up).

In that same vein, Rule 8 and Rule 9 work together to prohibit plaintiffs from engaging in so-called "group pleading," where allegations are asserted broadly against a group of individuals rendering it "far from clear against which [d]efendants . . . the claims are brought," *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 860 (E.D. Pa. 2017), or where a pleading fails to allege

---

[16] Additionally, and especially relevant here, "document[s] integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment"—plaintiffs "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly reference them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up).

"which particular acts were taken by which particular defendants," *Grande v. Starbucks Corp.*, 2019 WL 1455445, at *3 (E.D. Pa. Apr. 2, 2019); s*ee also Garrisons Printing Co. v. Steven Mandarino Fine Arts, Inc.*, 1986 WL 13837, at *2 (E.D. Pa. Dec. 5, 1986) ("Broad, blanket allegations that group numerous parties under the general label of 'Defendants' fail to meet the particularity requirements of Rule 9(b)."); *U.S. ex rel. Bennett v. Bayer Corp.*, 2022 WL 970219, at *7 (D.N.J. Mar. 31, 2022) (holding because complaint "vaguely refer[red] to statements of 'Defendant' or 'Defendants'" its allegations "amount[ed] to an impermissible group pleading—one that fails to meet even Rule 8(a)(2)'s notice pleading standard, let alone the particularity standard of Rule 9(b)").

## ARGUMENT

## I.    THE COMPLAINT FAILS TO PLEAD SUFFICIENTLY A CAUSE OF ACTION FOR RESCISSION.

Count I of the Complaint purports to assert a cause of action for rescission, presumedly against all Defendants, given the Count's use of the term "Rothrock," Compl. ¶¶ 49–55, which is defined as including all Defendants, *id.* ¶ 10.  Specifically, the Complaint alleges that Defendants "made multiple material misrepresentations to" Plaintiffs "regarding the Dealerships' financial condition," upon which Plaintiffs relied when entering into the APA and PSA; "allow[ing] the expiration of due diligence"; and completing the purchase of the Dealerships and associated real estate pursuant to the terms of the APA and PSA.  *Id.* ¶¶ 50-51.  The Complaint further alleges that Defendants' purported misrepresentations induced Plaintiffs to purchase the Dealerships and associated real estate "that they never would have otherwise purchased"; that the APA and PSA are "voidable contracts" and "capable of being unwound"; and that rescission can place the parties in "the condition they were in before" Defendants' alleged conduct."  *Id.* ¶¶ 49–55.

For the reasons discussed below, the Complaint does not plead a plausible cause of action

for rescission; and Count I should be dismissed.

### A.    Pennsylvania Does Not Recognize An Independent Cause Of Action For Rescission.

"Rescission is not a claim for relief or a cause of action, but rather it is an equitable remedy within a court's discretion." *Atl. Hldgs., Ltd. v. Apollo Metals, Ltd.*, 263 F. Supp. 3d 526, 532 (E.D. Pa. 2017) (quoting *Therien v. Trustees of Univ. of Penna.*, 2006 WL 83448, at *3 (E.D. Pa. Jan. 10, 2006)); *see also, e.g.*, *Pallante v. Those Certain Underwriters at Lloyd's*, 2018 WL 3995949, at *6 (E.D. Pa. 2018) (similar (citing *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 770 (3d Cir. 1984))); *Prof. Sys. Corp. v. Opex Postal Tech.*, 2006 WL 573798, at *5 (E.D. Pa. Mar. 8, 2006) (similar (citing *Enter., Inc. v. Borden*, 807 F.2d 1169, 1174 (3d Cir. 1986))); *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F. Supp. 2d 589, 594–95 (E.D. Pa. 1999) (similar).  For this reason alone, Defendants' Motion should be granted as to Count I; and Count I should be dismissed.  *See, e.g.*, *Fulton Fin. Advisors, Nat'l Assoc. v. NatCity Investments, Inc.*, 2013 WL 5635977, at *18 (E.D. Pa. Oct. 15, 2013) (dismissing claim for rescission because Pennsylvania does not recognize it as an independent cause of action); *Kushnir v. Aviva Life & Annuity Co.*, 2013 WL 4479196, at *4 (E.D. Pa. Aug. 22, 2013) (same); *Fulton Bank, N.A. v. UBS Sec., LLC*, 2011 WL 5386376, at *16 (E.D. Pa. Nov. 7, 2011) (same).

### B.    The Rescission Claim Is Barred By Pennsylvania's Parol Evidence Rule.

Additionally, Pennsylvania's parol evidence rule bars claims alleging fraudulent inducement ***as well as*** claims involving requests for rescission of a fraudulently induced contract where the relevant contract is "written, unambiguous, and fully integrated."  *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F. Supp. 2d 589, 594–95, 596–97 (E.D. Pa. 1999); *see also Berardine v. Weiner*, 198 F. Supp. 3d 439, 445–46 (E.D. Pa. 2016) (same).

Here, too, the Complaint comes up short.  The Complaint tells a story about a sophisticated

14

and experienced family run car-dealership business that entered into and closed a multimillion-dollar commercial transaction with another family run car-dealership business to purchase assets and real estate. That transaction was effectuated and documented by two contracts—the APA and PSA—neither of which the Complaint alleges was ambiguous. And, fatal to Plaintiffs' claims, both the APA and PSA contained integration clauses.

Specifically, the APA's "Entire Agreement" provision stated plainly that the APA's terms, its exhibits, its schedules, and "the documents delivered pursuant" to its terms were "intended by the parties as a final expression of their understanding and/or a complete and exclusive statement of the terms and conditions concerning the subject matter" of the agreement; that they would "supersede[] all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether written or oral, of the parties"; and that there were "no representations, warranties, or other agreements between the parties in connection with the subject matter" of the agreement, "except as specifically set forth" in the agreement. Ex. 1 § 30. Similarly, the PSA contained a provision stating plainly that it "contain[ed] the entire agreement between" the parties "and there [were] not other terms, obligations, covenants, representations, statements, or conditions oral or otherwise, of any kind or nature whatsoever." *Id.* Ex. A § 17(c).

If Plaintiffs considered Defendants' explanation about the management, accounting, and allocation of pack monies (and their correlation to and effect on the Dealerships' revenue and profit) "centrally important" to their decision to do the deal, they should have insisted that Defendants' explanations be memorialized and "contained in the integrated written agreement." *Berardine*, 198 F. Supp. 3d at 445–46 (citing *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atl. Prop., Inc.*, 653 A.2d 663, 670 (Pa. Super. Ct. 1995)). They did not. Pennsylvania's parol evidence rule bars Plaintiffs' attempt to remedy that oversight. Count I should be dismissed for

this reason, too.

    **C.    The Complaint Does Not Plead Adequately The Extraordinary Circumstances Warranting Rescission.**

    Finally, even if this Court were to indulge Plaintiffs' request for rescission (which it should not), the Complaint does not allege the requisite "***extraordinary circumstances***" justifying the remedy. *Cabot v. Jamie Rec. Co.*, 1999 WL 236737, at *6 (E.D. Pa. Apr. 19, 1999), *aff'd*, 248 F.3d 1129 (3d Cir. 2000) (quoting *Castle v. Cohen*, 676 F. Supp. 620, 627 (E.D. Pa. 1987), *aff'd and remanded*, 840 F.2d 173 (3d Cir. 1988)) (emphasis in original). "Inadequacy of price, improvidence, surprise, and mere hardship, none of th[ose]"—whether individually or collectively—"furnish an adequate reason" for rescission of a contract. *Charlton v. Garb*, 2010 WL 653155, at *5 (E.D. Pa. Feb. 19, 2010) (quoting *Snow v. Corsica Constr. Co.*, 329 A.2d 887, 889 (Pa. 1974)). Rescission is appropriate only where the plaintiff "has suffered a breach of such a fundamental and material nature that it affects the very essence of the contract and serves to defeat the object of the parties"; the parties to the contract can be "restored to substantially the same position they occupied when the contract was made"; there is no adequate remedy at law; and the party seeking rescission promptly acted "to notify the other party without delay, or within a reasonable time". *Cabot*, 1999 WL 236737, at *6–8 (citing and discussing cases). None of those circumstances are present here.

    For example, the supposed "breach" alleged in the Complaint is not so "fundamental and material" that it "affects the very essence of the contract and serves to defeat the object of the parties." *Id.* at *6 (quoting *Castle*, 676 F. Supp. at 627). Rather, even if presumed true (which it is not), Defendants' conduct alleged in the Complaint did nothing other than cause Plaintiffs to overvalue the assets and real estate they were purchasing pursuant to the APA and PSA and over-forecast the Dealerships going-forward revenue and profit. Rescission is not appropriate under

those circumstances, especially where Plaintiffs still own the Dealerships and the associated real estate. Compl. ¶ 53; *see, e.g.*, *Stein v. Matheson*, 539 F. Supp. 3d 463, 480 (E.D. Pa. 2021) (explaining "contracts cannot be rescinded or annulled simply because a part found the contract to be . . . a financial failure"). And, other than in bold and conclusory manner, the Complaint does not allege how the complex transactions conducted pursuant to the APA and PSA can be unwound at this time. *See, e.g.*, Compl. ¶¶ 54–55. Finally, the Complaint's own alternative causes of action demonstrate plainly that a remedy at law is available to Plaintiffs, *see id.* ¶¶ 56–104; and the Complaint fails to allege the justification for Plaintiffs' year-long delay before asserting their claim for rescission. For these reasons, too, Count I should be dismissed.

## II. THE COMPLAINT FAILS TO PLEAD SUFFICIENTLY A CAUSE OF ACTION FOR BREACH OF CONTRACT.

Count II of the Complaint purports to assert a cause of action for breach of contract against all Defendants. *Id.* ¶¶ 56–64.[17] Specifically, the Complaint alleges that "[u]nder the APA, [Defendants] agreed to provide a litany of disclosures relating to the Dealerships and represented and warranted that the information disclosed would not contain any untrue statement of a material fact or omi[t] or shall omit to state a material fact necessary to make the statements contained therein not misleading"; and that Defendants allegedly breached that obligation by "falsely represent[ing] that [Plaintiffs] had to add pack monies to the Dealerships' reported income figures in order to understand their true financial status," when, purportedly, "the pack monies had already been accounted for in income . . . in the financial statements provided Plaintiffs, and now were being double counted". *Id.* ¶¶ 58, 62 (third alteration in original; internal quotation marks omitted).

In Pennsylvania, "three elements are necessary to plead a cause of action for breach of

---

[17] Again, the relevant allegations refer to Defendants as "Rothrock," despite the fact that several of the Defendants had nothing to do with any information or data exchange that occurred between Plaintiffs and Defendants during the due diligence period.

contract": (1) "the existence of a contract, including its essential terms"; (2) "a breach of the contract"; and (3) "resultant damages". *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002)). Although the Complaint alleges that the APA is a valid contract between the relevant Plaintiffs[18] and Defendants, *id.* ¶¶ 56–64, it does not allege sufficiently that Defendants actually breached an obligation they owed Plaintiffs pursuant to any contract, let alone the APA. Instead, it frames the breach of contract claim around Defendants' purported obligation "to provide a litany of disclosures relating to the Dealerships and represented and warranted that the information disclosed would not contain any untrue statement of material fact or omi[t] or shall omit to state a material fact necessary to make the statements contained therein not misleading." *Id.* ¶ 58 (internal quotation marks omitted).

In reality, as discussed above, the Certificate of Seller and Seller Parties (Representations and Warranties) Defendants delivered to Plaintiffs at closing had nothing to do with the Dealerships' management, accounting, or allocation of pack monies, nor their impact on the Dealerships' revenue or profit. It simply certified that "[a]ll representations and warranties of [Defendants] contained in <u>Section 8</u> of [the APA] were true and correct in all material respects when made" and on the day of closing. Exhibit 2 ¶ 2 (emphasis in original). None of the representations or warranties made by Defendants in Section 8 of the APA, nor any of the exhibits, schedules, disclosure statements, or certificates Defendants were required to deliver to Plaintiffs pursuant to the APA, dealt with, involved, or referenced pack monies or Defendants' allocation,

---

[18] The Complaint alleges in a conclusory fashion that Plaintiff DCD RE Plaza Lane LLC—so called "**Nucar Real Estate**"—was a third party beneficiary of the APA, because Defendants "knew" that Nucar Real Estate would not purchase the real estate subject to the PSA but for Plaintiff DCD Nucar Alni LLC ("**Nucar**") remaining "satisfied through the completion of due diligence that the Dealerships' financial condition was as represented." Compl. ¶¶ 60–61.

accounting, or management of pack monies, with respect to calculating the Dealerships' revenue or profit or otherwise. *See id.* Exs. 1 & 3.

Moreover, neither the APA nor the PSA obligated Defendants to engage in some form of elevated due diligence, as otherwise suggested by the Complaint. *See id.* ¶¶ 58–60. To the contrary, Plaintiffs were in control of their "reasonable investigation" during the due diligence period, not Defendants. Defendants' only obligations with respect thereto were to "permit" Plaintiffs "to make such reasonable investigation of the Dealership[s] . . . financial and operating data"; grant Plaintiffs access to Defendants' accountant; and "furnish" the "financial and operating data and other information" as Plaintiffs "may reasonably request". *Id.* § 10.14; *see also id.* Ex. A § 5 (similar). The Complaint does not allege Plaintiffs failed to honor any of these obligations. And although the Complaint in several places references "general ledger entries" that it alleges "had not been provided . . . pre-closing," *id.* ¶¶ 42–43, it lacks any corresponding allegations stating that information and material was requested by Plaintiffs during the due diligence period and withheld by Defendants. Those allegations are not sufficient enough to plausibly establish that Defendants breached any obligation they had to Plaintiffs pursuant to the APA, the PSA, or otherwise. Count II should be dismissed.

## III.    THE COMPLAINT FAILS TO PLEAD SUFFICIENTLY A CAUSE OF ACTION FOR INDEMNIFICATION.

Count III of the Complaint purports to assert a claim for indemnification pursuant to the APA. Specifically, the Complaint alleges that because of their "breaches of [their] representations and warranties" in the APA, Defendants are "obligated to indemnify and hold harmless [Plaintiffs] against and from all 'Losses' (as defined in the APA[19]) incurred as a result of [Defendants']

---

[19] The term "Losses," as used in the APA, "(i) is not limited to matters asserted by third parties against Seller or Buyer, but includes losses incurred or sustained by such parties in the absence of third-party claims, and (ii) includes losses incurred through and after the date of the claim for

breaches." *Id.* ¶¶ 65–69. The specific "Losses" incurred by Plaintiffs allegedly "include, without limitation": "overpayment for the Dealerships' assets and the related real estate"; "the transactional costs associated with entering into and closing on" the APA and PSA; "losses incurred in the operation of the Dealerships and related real estate post-closing of the APA"; and "the costs and expenses associated with investigating and addressing" Defendants' alleged "breaches of [their] representations and warranties and fraudulent conduct, including, without limitation, forensic investigation fees and costs and attorneys' fees and costs". *Id.* ¶ 67. The Complaint does not allege the dollar amount associated with such "Losses." *Id.* ¶¶ 65–69.

Pennsylvania law requires a party seeking contractual indemnification "to establish the underlying right" to indemnification, including "the legal issue of the scope of the indemnification agreement"; "the nature of the underlying claim"; "its coverage by the indemnification agreement"; "the reasonableness of the alleged expenses" incurred by the party seeking to be indemnified; and, "where the underlying action is settled rather than resolved by payment of a judgment, the validity of the underlying claim and the reasonableness of the settlement". *McClure v. Deerland Corp.*, 585 A.2d 19, 22 (Pa. Super. 1991); *see also IU N. Am., Inc. v. Gage Co.*, 2002 WL 1277327, at *9 (E.D. Pa. June 4, 2002) (similar).

In determining whether a claim for indemnity falls within the scope of the parties' agreement, courts refer to principles of contract interpretation, including Pennsylvania's requirements that indemnification agreements be "narrowly interpreted," "construe[d] . . . against the party seeking indemnification," and evaluated solely by "the language used in the agreement," unless it is unclear or ambiguous. *Ogontz Fire Co. v. Cheltenham Twp.*, 2025 WL 2004692, at *3

---

indemnification (including any losses suffered after the end of any applicable survival period, with respect to any such claim)", and includes "all claims, losses, damages, debts, obligations and liabilities, including reasonable attorneys' fees and disbursements." Ex. 1 §§ 17.1, 17.3.

(E.D. Pa. July 17, 2025). Additionally, "[u]nder Pennsylvania law, unless a loss has actually been incurred, an indemnity claim for that loss is premature." *Id.* at *5 (quoting *Key Star Partners, LLC v. Insignia Disposal Serv., LLC*, 2023 WL 2920283, at *7 (E.D. Pa. Apr. 12, 2023)). Particularly relevant here, "[t]he mere expenditure of counsel fees does not constitute the accrual of a cause of action for indemnification," because "the appropriateness and reasonableness of the counsel fees and costs allegedly incurred to date cannot be determined until the underlying actions are resolved." *Id.* at *5 (alteration omitted) (quoting *McClure*, 585 A.2d at 22–23); *see also Invensys Inc. v. Am. Mfg. Corp.*, 2005 WL 600297, at *3 (E.D. Pa. Mar. 15, 2005) (same).

Section 17.1 of the APA[20] provides, in relevant part, that,

> [f]rom and after the Closing Date [*i.e.*, May 1, 2024], Seller and each Seller Related party [*i.e.*, Defendants], jointly and severally, shall each indemnify, defend and hold harmless Buyer [*i.e.*, Plaintiffs] from and against any and all claims, losses, damages, debts, obligations and liabilities, including reasonable attorneys' fees and disbursements (collectively, "<u>Losses</u>"), based upon, and incurred in connection with, arising out of or otherwise in respect of any of the following (i) any false or inaccuracy or misrepresentation, breach or failure of, any representation or warranty of Seller or any Seller Related Party contained in th[e APA] or any Seller Closing Document[], or in any certificate, exhibit, schedule or documents delivered by Seller or any Seller Related Party [*i.e.*, Defendants] pursuant to th[e APA].

Ex. 1 § 17.1. The Complaint does not allege that this provision of the APA is unclear or ambiguous. Pennsylvania law thus requires it to be construed narrowly and against Plaintiffs. *See Ogontz Fire Co.*, 2025 WL 2004692, at *3. In doing so, the Complaint fails to allege sufficiently that this dispute falls within the scope of Section 17.1 or that Plaintiffs' claim for indemnification is ripe for adjudication.

---

[20] The Complaint does not allege that its claim for indemnification is based on the PSA. Compl. ¶¶ 65–69. Nor could it. The PSA does not contain a provision providing for indemnification between the parties. *See* Ex. 1 at Ex. A.

**A.    The Complaint Does Not Plead Sufficiently That This Dispute Falls Within The Scope Of The Parties' Indemnification Agreement.**

*First*, as discussed above, the well-pleaded non-conclusory allegations in the Complaint do not establish plausibly that Defendants breached any representation or warranty contained in the APA or the PSA.  Rather, the Complaint's description of Defendants' alleged misconduct relates to extra-contractual statements, conversations, and disclosures that are not provided for in and excluded from any representation, warranty, covenant, exhibit, certificate, or disclosure made pursuant to the APA or the PSA.  *See* Ex. 1 § 30; Ex. 1, Ex. A § 17(c).  Thus, Plaintiffs' indemnity claim is outside the scope of the APA's indemnification provision and should be dismissed.

**B.    Plaintiffs' Indemnity Claim Is Not Yet Ripe For Adjudication.**

*Second*, because Plaintiffs' underlying basis for indemnification has yet to be determined, their claim for indemnity remains "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," *Crestar Mortg. Corp. v. Peoples Mortg. Co.*, 818 F. Supp. 816, 818–20 (E.D. Pa. 1993), notwithstanding the Complaints' allegations that Plaintiffs have incurred attorneys' fees and costs, *Ogontz Fire Co.*, 2025 WL 2004692, at *5.  Accordingly, Plaintiffs' indemnification claim is not yet ripe for adjudication.  *Id.*

The Complaint also fails to allege whether and how Plaintiffs complied with Section 17.4's prerequisites before filing this action.  *See* Ex. 1 § 17.4.  In particular, Plaintiffs did not "make available . . . the information relied upon . . . to substantiate" their claims until, *id.*, at the earliest, June 21, 2025, when they disclosed information regarding the methodology, processes, and assumptions used by Plaintiffs, their accounting professionals, or Moss Adams in conducting the analyses supporting Plaintiffs' claims for indemnity, *see* Ex. 7.  Additionally, because Plaintiffs insisted that Defendants conclusively respond to the Claim Notice by July 4, 2025, Defendants were not permitted to investigate Plaintiffs' claims for the full thirty (30) day period called for in

the APA. *See* Ex. 1 § 17.4. Plaintiffs also did not attempt to resolve this dispute for the required

thirty (30) day period after Defendants responded to the Claim Notice, as also required by Section

17.4. *Id.* Plaintiffs' indemnity claim is not yet ripe for these reasons, too.

## IV.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY A CAUSE OF ACTION FOR FRAUDULENT MISREPRESENTATION.

Count IV purports to assert a cause of action for fraudulent misrepresentation. Compl.

¶¶ 70–78. Specifically, the Complaint alleges that "[f]or the purpose of inducing others to purchase

the Dealerships' business assets and related real estate," Defendants "intentionally and falsely

represented the financial state of the Dealerships to [their] [B]roker, who then published the

materially false information into the Pitch Deck shared with Plaintiffs"; that Defendants "falsely

inflated the pack monies reflected in" the "financial information contained within the Pitch Deck,"

which "caused the Dealerships' overall financial picture, including annual net profit, to appear

more positive than it was in reality"; that, "[a]s a result of" Defendants' "false representation in

the Pitch Deck," Plaintiffs were induced to enter into the APA and PSA; that, after Plaintiffs

entered into the APA and PSA, Defendants allegedly "repeatedly informed Plaintiffs during due

diligence that the pack monies taken into income were not reflected in the financial statements

supplied to Plaintiffs for the 2020-2023 period under evaluation and needed to be added to the

revenue/income for the Dealerships to understand the Dealerships' true financial performance,"

which the Complaint alleges "was a bald-faced lie"; and that Defendants' "continued intentionally

false representations" not only "induced" Plaintiffs to enter into the APA and PSA, but further

induced Plaintiffs "to allow their due diligence rights (which provided them with the right to exit

both" the APA and PSA "without completing the purchase[s]) to lapse and to close," *id.* ¶¶ 70–77.

To plead adequately a cause of action for fraudulent misrepresentation, a plaintiff must

allege sufficiently (1) "a representation"; (2) "that is material to the transaction at issue"; (3) "made

falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false"; (4) "with the intent to mislead another person into relying on it"; (5) "justifiable reliance"; and (6) an injury proximately caused by the reliance". *Abria Med. Labs. LLC v. Meritain Health, Inc.*, 2025 WL 920260, at \*2 (E.D. Pa. Mar. 26, 2025) (quoting *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645–46 (Pa. 2012)). Those allegations must made "with sufficient particularity to place the defendant[s] on notice of the precise misconduct with which [they are] charged." *Frederico*, 507 F.3d at 200 (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (cleaned up). Because the Complaint fails to do so, the fraudulent misrepresentation claim should be dismissed.

### A.    The Complaint Does Not Allege Specifically Which Defendants Made The Alleged Misrepresentations.

The Complaint's use of group pleading—including with respect to the claim for fraudulent misrepresentation—is confusing, inappropriate, and inadequate to meet Plaintiffs' pleading burden. *See, e.g.*, *Bartol*, 251 F. Supp. 3d at 860; *Grande*, 2019 WL 1455445, at \*3. Indeed, in reciting the specific count, the Complaint does not once refer to any individual Defendant, instead continuously (and inadequately) lumping them together. Compl. ¶¶ 70–78. The rest of the Complaint's allegations fare no better. The only specific Defendant identified as having made any statements or representations related to Plaintiffs' fraudulent misrepresentation claim is David Rothrock—and only in four (4) paragraphs. *See id.* ¶¶ 33, 36, 37, 39. For this reason, alone, the fraudulent misrepresentation claim should be dismissed.[21]

### B.    The Complaint Fails To Allege Specifically Or Adequately A Fraudulent Misrepresentation Claim.

The Complaint similarly fails to allege with the required specificity the elements of the

---

[21] What is more, for many of the alleged misstatements identified in the Complaint, the relevant speaker was the Broker (who prepared and distributed the Pitch Deck), not any of Defendants. *See id.* ¶¶ 71–73. The Complaint makes no effort to allege the Broker's statements should be attributed to any Defendant, apart from improperly broad and conclusory allegations.

fraudulent misrepresentation claim.

  *First*, Plaintiffs have not and cannot allege that they justifiably relied upon any of the alleged misstatements identified in the Complaint.  Of the seven specific statements identified in the Complaint that allegedly were made by "Defendants" (or David Rothrock) regarding the Dealerships' management, accounting, or allocation of pack monies, none of them involved a pre-close statement made by Defendants to Plaintiffs that was not disclaimed explicitly from the contours of the parties' agreement by the APA's and PSA's "Entire Agreement" provisions.  As discussed above, both the APA and the PSA disclaim "all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether written or oral, of the parties" not articulated within their four corners and accompanying exhibits, schedules, certificates, and documents delivered pursuant to those agreements.  Ex. 1 § 30; *see also* Ex. 1, Ex. A § 17(c).  As a result, Pennsylvania's parol evidence rule prohibits Plaintiffs from asserting that they relied on statements made outside of APA and PSA, and the fraudulent misrepresentation claim will be dead on arrival.  *See, e.g.*, *K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc.*, 689 F. Supp. 3d 35, 47–48 (E.D. Pa. Aug. 30, 2023).

  Moreover, the Complaint alleges that Plaintiffs "ha[d] operated automobile dealerships for over 40 years" and were "one of the largest automotive groups in New England."  Compl. at 2.  As a sophisticated party involved in an arms'-length transaction valued in the eight-figures, Plaintiffs had months to conduct broad due diligence with respect to the APA and PSA, which included gaining access to Defendants' accounting team and virtually unlimited access to Defendants' financial information and data.  Ex. 1 § 10.14.  Because "courts may consider the nature of the relationship between the parties when analyzing the justifiable reliance element of a fraud claim," Pennsylvania courts are reluctant "to find reliance justified" in the sort of circumstances here,

"where the party claiming reliance had an adequate opportunity to verify the allegedly fraudulent statements." *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 709 (E.D. Pa. Aug. 12, 2021) (internal quotation marks omitted); *see also Boardakan Rest. LLC v. Gordon Grp. Hldgs., LLC*, 2016 WL 6213035, at *13 (E.D. Pa. Oct. 14 (2016) ("[I]n deciding whether the plaintiff justifiably relied on the information, a court may consider the degree of sophistication of the parties and the history of the negotiation process between them." (citing *Greenberg v. Tomlin*, 816 F. Supp. 1039, 1056 (E.D. Pa. 1993))).

*Second*, the Complaint does not sufficiently plead the purported misstatements were material. Other than boilerplate and conclusory allegations, the Complaint contains no specific detail of how the purported misstatements were "of such a character that if it had not been made, the transaction would not have been entered into." *Lind v. Jones, Lang LaSalle Am., Inc.*, 135 F. Supp. 2d 616, 620 (E.D. Pa. 2001) (citing *Delahanty v. First Pennsylvania Bank, N.A*., 464 A.2d 1243, 1252 (Pa. Super. 1983)); *see also Redick v. Kraft, Inc.*, 745 F. Supp. 296, 301 (E.D. Pa. 1990) ("A misrepresentation is material if it likely would have induced a reasonable person to enter into the contract." (citing *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138 (Pa. Super. 1985))).

*Third*, the Complaint lacks sufficient or particularized allegations that Defendants acted with the requisite knowledge and intent. The Complaint insists boldly that "[i]t is inconceivable that [Defendants] would accidentally misrepresent its income and profit" in its dealings with Plaintiffs, insisting that "[t]he only conceivable explanation is that [Defendants] intentionally misrepresented its treatment of pack monies to deceive [Plaintiffs] into placing a higher value on the Dealerships and the connected real estate than [Plaintiffs] otherwise would have." Compl. ¶ 45. But, at the same time, Plaintiffs feign ignorance to Defendants' treatment of pack monies,

despite spending months conducting due diligence on the financial condition of the Dealerships and their sophistication and experience in the relevant industry. Without additional and particularized allegations, the Complaint's allegations with respect to Defendants' knowledge and intent fall short.

## V.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY A CAUSE OF ACTION FOR FRAUDULENT CONCEALMENT.

Count V of the Complaint purports to assert a cause of action for fraudulent concealment, repeating many of the same allegations made with respect to the fraudulent misrepresentation claim. Specific to this claim, the Complaint alleges that Defendants "concealed that substantial pack monies were included in the income and adjusted net profit figures on the Pitch Deck when it stated the opposite was true"; engaged in a "misdirection" that "constituted a concealment" by "repeatedly inform[ing] Plaintiffs during due diligence that the pack monies taken into income were not reflected in the financial statements supplied to Plaintiffs . . . and needed to be added to the revenue/income . . . to understand the Dealerships' true financial performance"; and conducted "a calculated effort to thwart" Plaintiffs due diligence investigation into Defendants' treatment of pack monies. Compl. ¶¶ 81, 83, 85.

Although the elements of fraudulent concealment and fraudulent misrepresentation essentially are the same, the former involves a concealment rather than a positive assertion. *See, e.g.*, *Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1315–16 (Pa. Super. Ct. 1991); *Gnagey Gas & Oil Co., Inc. v. Pennsylvania Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 500 (Pa. Commw. Ct. 2013). But although "active concealment may constitute fraud, mere silence is not sufficient in the absence of a legal duty to disclose information." *Gnagey Gas*, 82 A.3d at 500. To demonstrate such a duty, a plaintiff "must show a special relationship that would give rise to a duty to speak between them and the party that fraudulently concealed information," such as a

fiduciary relationship.  *Marcum v. Columbia Gas Transmission, LLC.*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019).  Differences in knowledge, alone, do not create a special relationship.  *Id.*  In particular, the required "special relationship generally does not arise in a typical, arms-length business transaction." *Id.*

Given its substantial overlap to the Complaint's claim for fraudulent misrepresentation, the fraudulent concealment claim should be dismissed for failure to state a claim for the same reasons described above.  *See supra* at Section IV(A)–(B).

Additionally, the fraudulent concealment claim should be dismissed because the Complaint does not allege adequately a special relationship between Plaintiffs and Defendants that gave rise to a duty to speak.  Rather, the Complaint alleges that, at all relevant times, Plaintiffs and Defendants were sophisticated and experienced commercial actors in their fields, engaged in a detailed and months'-long business transaction.  The necessary duty or special relationship simply "does not arise" in those circumstances.  *Marcum*, 423 F. Supp. 3d at 121.

## VI.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY A CAUSE OF ACTION FOR FRAUDULENT NONDISCLOSURE.

Count VI of the Complaint purports to assert a cause of action for fraudulent nondisclosure. The elements for a claim for fraudulent nondisclosure are essentially the same as those for fraudulent misrepresentation and fraudulent concealment.  *See, e.g.*, *Team Biondi, LLC v. Navistar, Inc.*, 665 F. Supp. 3d 633, 644 (M.D. Pa. 2023).  With respect to fraudulent nondisclosure, a plaintiff must establish that "a duty to disclose exist[ed]."  *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 2022 WL 2985632, at *20 (E.D. Pa. July 28, 2022).  Such a duty typically arises only in a handful of limited circumstances, none of which are applicable here.  *Mohn v. Cardona*, 2022 WL 704646, at *5 (E.D. Pa. Mar. 9, 2022).  In particular, no such duty arises "where both the plaintiff and defendant were sophisticated business entities." *Bucci v. Wachovia Bank, N.A.*,

591 F. Supp. 2d 773, 783 (E.D. Pa. 2008) (internal quotation marks omitted) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995)).

Given its substantial overlap to the Complaint's claim for fraudulent misrepresentation and fraudulent concealment, the fraudulent nondisclosure claim should be dismissed for the same reasons described above. *See supra* at Sections IV(A)-(B), V.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' Complaint for failure to state a claim.


Dated: August 25, 2025                    Respectfully submitted:

                                          */s/ Ryan M. Moore*
                                          Morton R. Branzburg (Pa. I.D. No. 24477)
                                          Ryan M. Moore (Pa. I.D. No. 314821)
                                          **KLEHR HARRISON HARVEY
                                          BRANZBURG LLP**
                                          1835 Market Street, Suite 1400
                                          Philadelphia, Pennsylvania 19103
                                          Phone: (215) 569-2700
                                          Fax: (215) 568-6603
                                          mbranzburg@klehr.com
                                          rmoore@klehr.com

                                          *Counsel for Defendants*