IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DCD NUCAR ALNI LLC, individually and as successor by merger to DCD NUCAR ALCD LLC, and DCD RE PLAZA LANE LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>ROTHROCK MOTOR SALES, INC.,<br>DAVID B. ROTHROCK, individually and on behalf of THE ESTATE OF BRUCE L. ROTHROCK, SR.,<br>BRUCE L. ROTHROCK, JR,<br>DEAN A. ROTHROCK,<br>ROCK REAL ESTATE HOLDINGS, LLC, and<br>ROCK REAL ESTATE FAMILY PARTNERS, LP<br><br>        Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> :     Case No. 5:25-cv-04327-JFL <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## AMENDED COMPLAINT

Plaintiffs, DCD NUCAR ALNI LLC (the successor by merger of DCD NUCAR ALNI LLC and DCD NUCAR ALCD LLC) and DCD RE Plaza Lane LLC, plead the following allegations and claims against Defendants, Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP.

## Nature of the Action

This is a complaint for breach of contract, indemnification, fraud, and rescission arising out of the sale of two well-known Lehigh County automobile dealerships previously operating under the Rothrock family name, to a family-owned automotive group based in Massachusetts run by the Dagesse family.

33832474.5

The Dagesse family has operated automobile dealerships for over 40 years and has grown to be one of the largest automotive groups in New England. In 2023, the Rothrock family was looking to sell off the last of its remaining dealerships, a Nissan dealership and a Chrysler Dodge Jeep and Ram ("CDJR") dealership located in Allentown, Pennsylvania (collectively, the "Dealerships"). The Dagesse family saw this as an opportunity to continue to grow their business with the addition of two dealerships in Pennsylvania, and – for an eight-figure sum – purchased the assets of the Dealerships and the associated real estate from Rothrock Motor Sales, Inc. ("Rothrock Motors") and the Rothrock family.

Unbeknownst to the Dagesse family at the time, Rothrock (defined below) was perpetrating a fraud. Rothrock intentionally misrepresented the financial well-being of the Dealerships to induce the Dagesse family to buy the Dealerships' business assets and the associated real estate. As set forth in more detail below, the fraud was pre-meditated, willful, wanton and intentional and took place after execution of the parties' integrated contracts. Specifically, Rothrock mispresented the income and profits of the Dealerships by manipulating financial data and instructing the Dagesse family to interpret the financial information Rothrock supplied in a manner that overstated certain income known as "pack" monies. The result was that the Dagesse family had a grossly inflated and inaccurate understanding of the income of, and overall financial picture for, the Dealerships, which was only discovered after a post-closing forensic investigation.

Had the Dagesse family known the true financial state of the Dealerships, they would never have purchased the Dealerships or the related real estate. The Dagesse family brings claims for contract breach, fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure. They seek the alternative remedies of either (i) rescission of the subject contracts between the parties, or in the alternative, (ii) compensatory and punitive damages for the expenses

and losses they have suffered and will continue to suffer as a result of Rothrock's outrageous conduct.

## I.    Parties

1.    Plaintiff DCD NUCAR ALNI LLC ("Nucar") is a Delaware limited liability company that owns and operates the Dealerships, now known as Nucar Nissan of Allentown and Nucar CDJR of Allentown. Nucar's members are Christopher Dagesse ("Dagesse"), a resident of Massachusetts, and the 2012 Dagesse Family Trust organized under the laws of New Hampshire. Nucar is the successor by merger to DCD NUCAR ALCD LLC, which along with Nucar, was also a party to the transaction described herein. Nucar and, prior to its merger with Nucar, DCD NUCAR ALCD LLC, were the purchasers of the Dealerships' business assets in the transaction described herein. Nucar's registered address is 1000 North King Street, Wilmington, Delaware 19801.

2.    Plaintiff DCD RE Plaza Lane LLC ("Nucar Real Estate") is a Delaware limited liability company that owns the real estate in Allentown, Pennsylvania upon which the Dealerships acquired by Nucar operate, after having purchased the Dealerships' business assets from Rothrock Motors. Nucar Real Estate has a single member, the 2012 Dagesse Family Trust, and its trustees are Elaine Dagesse who is a resident of New Hampshire and Joel Carpenter who is a resident of Massachusetts. Nucar Real Estate's registered address is also 1000 North King Street, Wilmington, Delaware 19801.

3.    Defendant Rothrock Motors is a Pennsylvania Corporation with an outdated registered address located at 1648 Plaza Lane, Allentown, Pennsylvania 18104 (part of the real estate sold in 2024 to Plaintiffs) and whose authorized agent (David B. Rothrock) resides at 1645

Kecks Road, Breinigsville, Pennsylvania 18031. Rothrock Motors was the seller of the Dealerships' business assets in the transaction described herein.

4.     Defendant David is either the Executor of Defendant the Estate of Bruce L. Rothrock, Sr., Deceased (the "Bruce Sr. Estate"), or in the alternative, may be properly charged herein as an Executor *de son tort* of the Bruce Sr. Estate. Via its purported legal representative, David, the Bruce Sr. Estate is situated at 1645 Kecks Road, Breinigsville, Pennsylvania 18031. The Bruce Sr. Estate is a Seller Related Party under the APA (defined below) and, based on the APA, is the sole and only shareholder of Rothrock Motors.

5.     Defendant Rock Real Estate Family Partners, LP ("Rock Real Estate") is a Pennsylvania limited liability partnership. Rock Real Estate was the seller of the real estate upon which the Dealerships sold to Nucar operate. Based on the APA, the sole and only general partner of Rock Real Estate is Rock Holdings (defined below) and the sole and only limited partners of Rock Real Estate are David, Bruce, and Dean (each defined below).

6.     Defendant Rock Real Estate Holdings, LLC ("Rock Holdings") is a Pennsylvania limited liability company with an outdated registered address located at 1648 Plaza Lane, Allentown, Pennsylvania 18104 (part of the real estate sold in 2024 to Plaintiffs) and whose authorized agent (David) resides at 1645 Kecks Road, Breinigsville, Pennsylvania 18031. Rothrock Holdings is also a Seller Related Party under the APA and, based on the APA, is the sole and only general partner of Rock Real Estate.

7.     Defendant David B. Rothrock ("David") is an individual residing at 1645 Kecks Road, Breinigsville, Pennsylvania 18031. David is also a Seller Related Party under the APA and, based on the APA, is a limited partner of Rock Real Estate.

8.      Defendant Bruce L. Rothrock, Jr. ("Bruce") is an individual residing at 990 Palmers Mill Road, Media, Pennsylvania, 19063.  Bruce is also a Seller Related Party under the APA and, based on the APA, is a limited partner of Rock Real Estate.

9.      Defendant Dean A. Rothrock ("Dean") is an individual residing at 73-1215 Hamos Street, Kailua Kona, Hawaii 96740.  Dean is also a Seller Related Party under the APA and, based on the APA, is a limited partner of Rock Real Estate.

10.     Defendants Rothrock Motors, the Bruce Sr. Estate, Rock Real Estate, Rock Holdings, David, Bruce, and Dean are collectively referred to herein as "Rothrock."

## II.     Jurisdiction and Venue

11.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and there is complete diversity between the New Hampshire and Massachusetts-citizen Plaintiffs and the Pennsylvania (and in one case, Hawaii) based Defendants.

12.     This Court has personal jurisdiction over Defendants both generally and specifically because, on information and belief, Defendants do and have done substantial business in this judicial District, including: (a) committing acts of fraud in this State and judicial District out of which this action arises; (b) regularly conducting business in this State and judicial District; (c) directing advertising to or soliciting business from persons residing in this State and judicial District; (d) incorporating and/or residing in this State and judicial District; and (e) in several cases literally maintaining domicile in this State and judicial District.  Personal jurisdiction is also proper because the parties consented in the subject agreements to the jurisdiction and venue of this Court.

13.     Venue is likewise appropriate in this Court for the reasons stated above.

## III.     Allegations as to All Counts

**A.**     **Initial Representations and the Dealership Purchase Transaction**

14.     In or around early October, 2023, a well-known broker operating in the automotive dealer space approached Daniel and Christopher Dagesse, successful operators of more than 25 automobile dealerships throughout the United States, about two automobile dealerships for sale in Allentown, Pennsylvania, namely, the Dealerships.

15.     On October 23, 2023, Daniel Dagesse signed a non-disclosure agreement with this broker and was subsequently provided with a pitch deck containing financial information concerning the Dealerships (the "Pitch Deck").

16.     At the time Dagesse received this information, Rothrock had been operating car dealerships in Pennsylvania since the 1960s.

17.     Upon information and belief, the information contained in the Pitch Deck was supplied by one or more of the Defendants.

18.     The Pitch Deck stated that "Rothrock Motors has been Lehigh Valley motorists' most trusted name in automotive."

19.     At the time, the Dagesse family did not have any businesses, automotive or otherwise, located in Pennsylvania and did not know of, nor had they any prior business dealings with, Rothrock.

20.     The Pitch Deck contained specific revenue, expense, and net profit figures for the Dealerships, combined, for the years 2020 through the third quarter of 2023.

21.     The Pitch Deck also showed that Rothrock characterized a significant fraction of the Dealerships' annual net profits as "Add-Backs," and that by far the largest "Add-Back" component in every year was a "Pack Adjustment."

33832474.5

22.     The Pitch Deck included "Profit Performance," which reported financial figures, including adjusted profit figures, for the Dealerships, combined, for periods back to calendar year 2020.

23.     The Profit Performance pages from the Pitch Deck culminate in computations of the Adjusted Profits for the Dealerships for the 2020-2023 period, as follows:

- 2020: $1,519,516
- 2021: $6,402,303
- 2022: $2,860,662
- 2023: YTD (9 months): $3,192,727; annualized $4,256,969

24.     The Profit Performance pages from the Pitch Deck also include a row titled "Pack Adjustments."  In the automotive industry, a "pack" is a predetermined expense added by a dealer to the invoice price of a vehicle that is intended to account for overhead expenses such as rent, advertising, and vehicle reconditioning, and it reduces the revenue generated by the vehicle before a salesperson's commission is calculated.  Most dealerships, including those operated by Rothrock, utilize multiple "packs." Pack monies are also taken into income by a dealership and customarily "earned" and effective at the time a vehicle is sold.

25.     Plaintiffs did not blindly accept the Pitch Deck at face value. However, after reviewing the information the Pitch Deck conveyed, Plaintiffs decided that the Dealerships presented a *potentially* attractive opportunity.

26.     Nucar inquired as to Rothrock's treatment of pack monies for the Dealerships. Specifically, on November 7, 2023, Nucar contacted the broker that supplied the Pitch Deck and asked about how Rothrock took its pack monies into income. The broker responded "Seller's W2

and or dealership income on the 13th month stmt[1]…." In other words, the adjusted revenue and income figures supplied did ***not*** include the pack monies in income.

27.    Satisfied thus far with Rothrock's representations of the Dealerships' income (relayed by the broker), and continuing to perceive an attractive expansion opportunity, Plaintiffs proceeded with negotiating and entering into an Asset Purchase Agreement for the assets of the Dealerships (the "<u>APA</u>") and a Purchase and Sale Agreement for the real estate upon which the Dealerships operate (the "<u>P&S</u>") containing appropriate due diligence protections.

28.    Because the real estate purchased by Plaintiffs under the P&S served no purpose except as the physical location of the Dealerships purchased under the APA and was specifically improved for the operation of automobile dealerships, the purchase of the real estate under the P&S was expressly contingent on the parties simultaneously closing on the Dealerships under the APA.

29.    The APA and P&S were finalized and executed on January 29, 2024, at which time the contractually-prescribed due diligence began.

30.    A fully executed copy of the APA, dated January 29, 2024 (schedules omitted) is attached hereto as **Exhibit A**.

31.    A fully executed copy of the P&S dated January 29, 2024 is attached hereto as **Exhibit B**.

32.    A fully executed copy of the First Amendment to the APA dated March 3, 2024 is attached hereto as **Exhibit C**.

---

[1] The 13th month is an accounting concept in the automotive industry to record year-end items. Some of the more common items that are recorded in a 13th month could include adjustments for year-end reporting (i.e., depreciation, chargeback reserves, trade discounts, inventory write-downs), non-recurring, non-operational or unusual items (i.e., significant insurance claims or refunds, warranty/incentive audit chargebacks) and year-end items such as owner/executive bonuses, deferred compensations and investment gains or losses.

33.    A fully executed copy of the Second Amendment to the APA dated March 6, 2024 is attached hereto as **Exhibit D**.

34.    A fully executed copy of the Third (and final) Amendment to the APA dated March 8, 2024 is attached hereto as **Exhibit E**.

35.    Under the APA, "[d]uring the period that commences on the Effective Date [(January 29, 2024)] and ends on the earlier of the Closing Date [(May 1, 2024)] or the termination of this Agreement [(inapplicable)], as the case may be [...] Seller shall permit Buyer and its authorized representatives to make such reasonable investigation of the Dealership Business's financial and operating data..." **Exhibit A (APA, Schedules Omitted[2]) § 10.14**.

36.    Between January 29, 2024 and May 1, 2024, Defendants ("Seller") were required to "furnish to Buyer and its authorized representatives such financial and operating data and other information with respect to the Dealership Business and the Acquired Assets as Buyer may reasonably request." **Ibid.**

37.    Based on the information Plaintiffs obtained from Defendants and other sources, Plaintiffs were tasked with deciding whether to proceed with Closing on this Business and Property purchase or not.

38.    Between January 29, 2024 and March 8, 2024, Plaintiffs could terminate the APA and P&S and avoid purchasing these assets from Defendants at no cost to themselves. *See* **Exhibit A (APA) § 10.14** (setting forth Plaintiffs' right to terminate at no cost during Due Diligence)**; Exhibit B (P&S) § 20** (purchase of Real Property contingent on Purchase of Business under the APA); **Exhibit D (2nd Am. to APA) §§ 2 – 3** (extending Due Diligence deadline to March 8, 2024).

---

[2] Hereinafter simply "**APA**."

39.     After March 8, 2024, and until Closing took place on May 1, 2024, Plaintiffs still could avoid these purchases if they were willing to incur a Default expense. *See* **Exhibit A (APA) §§ 23.1 – 23.2; 38(a)**.

40.     But in order to motivate Plaintiffs not to exit the deal, Rothrock provided Plaintiffs with an explicit contractual guaranty that the information it was supplying Plaintiffs under the APA was thorough and honest. Specifically, the APA provided that:

> **8. REPRESENTATIONS AND WARRANTIES OF SELLER**. Seller makes the following representations and warranties to Buyer **in order to induce Buyer to enter into and consummate this Agreement** as contemplated herein and Seller hereby represents and warrants the following to be true on the Effective Date and as of the Closing Date:
>
> [...]
>
> **8.23. Disclosures**. No representation or warranty or other statement made by Seller in this Agreement, **nor any written statement, schedule or exhibit furnished or to be furnished by or on behalf of Seller pursuant to this Agreement**, **nor any document or certificate delivered to Buyer pursuant to this Agreement**, contains or shall contain any untrue statement of a material fact or omits or shall omit to state a material fact necessary to make the statements contained therein not misleading.

**Exhibit A (APA) § 8; 8.23** (emphasis added).

**B.     Due Diligence and Continued Representations About Packs**

41.     The APA was structured such that it gave Plaintiffs a period of time to obtain truthful and accurate information from Defendants regarding the Dealerships so that they could make an informed decision on whether to proceed with acquisition or not.

42.     During this January 29, 2024 to May 1, 2024 timespan, Plaintiff Nucar was in regular communication with Rothrock and the broker and specifically asked numerous times for clarification about the financial information for the Dealerships contained in the Pitch Deck and in financial spreadsheets and documentation supplied after execution of the APA in an effort to

understand how Rothrock had prepared its financial statements and allocated for certain income and expenses.

43.     Of particular and continuing concern and focus for Nucar were Rothrock's treatment of pack monies.

44.     Throughout the January 29, 2024 to May 1, 2024 timespan, David (Rothrock) repeatedly told Dagesse both orally and in writing that the pack monies must be added back to adjusted net income figures provided to Nucar in order to understand the "true" income and profit of the Dealerships. It would turn out that these representations by David were patently false.

45.     On January 6, 2024, Dagesse texted David asking him to "explain briefly the packs that are on the add back sheet that [the broker] sent us? Just trying to better understand that line."

46.     On or about February 9, 2024, pursuant to Section 10.14 of the APA, Rothrock gave Nucar access to a "data room" created by Rothrock that contained certain financial information for the Dealerships. This information was provided at least in part to address Nucar's concerns about the pack money issue. And upon review, this financial data appeared to Nucar to echo and be consistent with the pre-APA Pitch Deck.

47.     On or about February 13, 2024, pursuant to Section 10.14 of the APA, Rothrock provided Nucar with a document entitled Inventory Pack Listing which detailed all the pack monies that Rothrock utilized and how and where they were reflected in the Dealerships' financial statements.

48.     On February 18, 2024, pursuant to Section 10.14 of the APA, Dagesse sent Rothrock a list of questions about the financials Rothrock had provided and specifically asked "Where is the statement's 1.5m [($1,500,000)] of pack adjustment going?"

49.     In response, David wrote "These amounts are added to the cost of the vehicles and set up as liabilities on the balance sheet in the previously indicated accounts. The pack adjustments add back represents the unused portion of these packs that are remaining on the balance sheet. These amounts are then adjusted into income in the 13th month each year for tax reporting purposes." This written response by David was patently false.

50.     On February 27, 2024, Rothrock provided Nucar with a spreadsheet entitled "Vehicle Packs" that detailed all vehicle packs that Rothrock had used since 2022 and the amounts set for each as specific line items.  This spreadsheet also explained where Rothrock had included each pack line item on its balance sheet and indicated that the pack monies were taken into income in a 13th month statement (i.e. the pack monies are not reflected in income in the monthly financial statements Nucar received). This financial disclosure of the pack monies was patently false.

51.     On March 11, 2024, Dagesse asked David to confirm that Nucar needed to add the pack monies, reflected in the February 27th spreadsheet, to the adjusted net income data Rothrock had supplied for fiscal year 2022 to have an accurate picture of the Dealerships' income for 2022.

52.     David quickly confirmed and in so doing fraudulently misrepresented the Dealerships' financial data.

53.     Consistent with the prior explanations from David, Dagesse understood that Rothrock's pack monies were not reflected in income in the financial statements Nucar received during due diligence and were only accounted for in Rothrock's 13th month financial statements.

54.     From beginning to end, these verbal and written explanations, answers, and detailed written financial disclosures were (as far as pack monies were concerned) patently false.  David repeated these falsehoods to Dagesse consistently and regularly until May 1, 2024, when Nucar was successfully induced to Close under the APA and P&S.

55.     At all pertinent times, David communicated these false statements and pieces of information as the primary representative, negotiator, and communicator on behalf of all Defendants (individual and otherwise) as the sellers of the Dealership and Property. By signing the P&S, APA, and all amendments thereto, as well as Sellers' Certificate at Closing, the individual Defendants acquiesced to David speaking for them, and in material respect, speaking for them falsely.

56.     The acquisition of the assets of the Dealerships and real estate closed on May 1, 2024, with Rothrock affirming in a signed Certificate delivered to Nucar at closing that "[a]ll representations and warranties of Seller contained in Section 8 of the Agreement were ***true and correct in all material respects*** when made, are ***true and correct in all material respects on and as of the date hereof*** as if made as to the date hereof (except in each case for those representations and warranties which address matters only as of a particular date, which representations and warranties are true and correct in all material respects as of such particular date)." (emphasis added).

57.     A fully executed copy of Rothrock's May 1, 2025 Closing Certificate – Rothrock's final falsehood that induced Plaintiffs to close – is attached hereto as **Exhibit F**.

58.     In combination with the language in Section 8.23 of the APA, Rothrock's Certificate constituted a final confirmation of their promise - from beginning to end - that all representations made ***after*** execution of the APA and ***before*** Closing were "true and correct in all material aspects."

**C.**     **The Discovery of Accounting Irregularities**

59.    Following the closing of its acquisition of the assets of the Dealerships, Nucar became alarmed after the Dealerships' profits were significantly less than expected, as projected from the data provided by Rothrock pre-closing.

60.    Nucar's accounting team reviewed general ledger entries for the Dealerships for a limited pre-closing period which had not been provided to Nucar pre-closing. The entries belied Rothrock's prior representations that it did not take pack monies into income until the 13th month and that the same needed to be added to the adjusted revenue figures for the Dealerships supplied by Rothrock for Nucar to understand the true income for the Dealerships' operations. In fact, Rothrock had already included most of the pack monies as income in the Dealerships' revenue figures supplied to Nucar. By misrepresenting this fact, Rothrock misled Nucar into overcounting the pack monies in the Dealerships' revenue.

61.    After discovering this issue, Nucar hired Moss Adams, a public accounting firm with expertise relating to automotive dealerships, to conduct a forensic review of the financial statements, general ledgers, and other financial data prepared by Rothrock for the Dealerships prior to the sale to Nucar.  The dataset available to Moss Adams included the financial data supplied to Nucar by Rothrock prior to the closing of the purchase of the Dealerships' assets and documentation and data that had not been provided to Nucar by Rothrock prior to the closing.

62.    Moss Adams's investigation uncovered that the financial records supplied to Nucar prior to the closing of the APA and P&S by and/or at the direction of Rothrock in fact already accounted for the majority of pack monies in the Dealership's income for all years under consideration during due diligence, 2020-2024.  Accordingly, Rothrock's repeated statements to Nucar during Due Diligence and prior to Closing that the pack monies needed to be added to the income figures provided to understand the true financial picture of the Dealerships were materially

false and misleading. Rothrock's misrepresentations caused Nucar to have a grossly inflated and inaccurate understanding of the income and profits for the Dealerships.

63.     It is inconceivable that Rothrock would accidentally misrepresent its income and profit in this manner. The only conceivable explanation is that Rothrock intentionally misrepresented its treatment of pack monies to deceive Nucar into placing a higher value on the Dealerships and the connected real estate than Nucar otherwise would have.

64.     Moss Adams computed that Rothrock's misrepresentations to Nucar regarding its treatment of pack monies resulted in material overstatements of the Dealerships' income for the operational years under examination, 2020-2023.

65.     These overstatements of income of the Dealerships induced Nucar and Nucar Real Estate to close on the transactions contemplated by the APA and P&S on false pretenses and with a grossly inaccurate understanding of the financial picture of the Dealerships.   Nucar and Nucar Real Estate would have never entered into the APA and P&S or allowed the due diligence period under the APA to expire without terminating the same, respectively, but for the false and misleading statements and information regarding the Dealerships' income and profitability provided to them by Rothrock and amplified by a well-respected broker in the automotive retail space.

66.     Rothrock's false and intentionally misleading statements, which they actively concealed and never corrected, not only fraudulently induced Nucar and Nucar Real Estate to proceed with the transactions but caused Nucar and Nucar Real Estate to overvalue the Dealerships and the related real estate, causing them to pay millions of dollars more for the Dealerships and the related real estate than they were worth.

67.     At all relevant times, Defendants were parties to a business transaction with Plaintiffs involving the sale of the Dealerships and related real estate for an eight-figure purchase price. Under Pennsylvania common law and the language of the APA, Defendants owed Plaintiffs a duty to disclose material facts relevant to the transactions, to avoid partial and misleading disclosures relating to the transactions, and to correct prior representations that Defendants knew to be false or misleading.

68.     Defendants possessed superior and exclusive knowledge concerning their internal accounting practices, including whether and when "pack" monies were taken into income. These facts were basic to the transaction and were not reasonably discoverable by Plaintiffs through ordinary diligence prior to Closing, particularly where Defendants controlled the financial data and provided explanatory narratives, echoed by a respected third-party broker, during due diligence that were aimed at concealing the actual financial state of the Dealerships and the accurate manner in which pack monies were recognized as income.

69.     Rothrock repeatedly communicated regarding pack monies by supplying financial statements, spreadsheets, balance-sheet explanations, and oral and written representations explaining how pack monies were treated for income and profit purposes. Having undertaken to speak, Defendants had a duty to disclose all material facts necessary to make those statements not misleading.

70.     Defendants breached their duties to Plaintiffs arising under the APA and from their obligation to another in society by failing to disclose that pack monies had already been included in the income reflected in the financial data provided to Plaintiffs, while simultaneously instructing Plaintiffs to add those same pack monies to the reported income to understand the Dealerships' "true" profitability.

33832474.5

71.    Defendants knew that Plaintiffs were relying on those explanations in deciding whether to proceed to close under the APA and P&S. Defendants had a continuing duty under the APA and from their obligation to another in society to correct their misleading representations and failed to do so.  In fact, they sought to actively conceal them.

72.    Defendants further knew that Plaintiffs were proceeding under a material misunderstanding concerning the Dealerships' true income and profitability, that this mistake went to the heart of the transaction, and that Plaintiffs reasonably expected full and accurate disclosure, particularly in light of Defendants' express representations and warranties in the APA that the information supplied would not omit material facts necessary to make the disclosures not misleading.

## COUNT I – BREACH OF CONTRACT

73.    Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

74.    Plaintiff Nucar entered into a contract with Rothrock to purchase the assets of the Dealerships, the terms of which are memorialized in the APA.

75.    Under the APA, Rothrock agreed to provide a litany of disclosures relating to the Dealerships and represented and warranted that the information disclosed would not "contain any untrue statement of a material fact or omi[t] or shall omit to state a material fact necessary to make the statements contained therein not misleading."

76.    At the time Rothrock entered into and made representations and warranties under the APA, it knew that Plaintiff Nucar Real Estate (a) intended to purchase the real estate containing the Dealerships for the sole purpose of allowing Plaintiff Nucar to operate the Dealerships, and (b)

would not follow through with this transaction unless the Dealerships were actually purchased. The APA and P&S expressly stated these conditions.

77.    At the time Rothrock entered into the APA and made representations and warranties under the APA, it knew that Plaintiff Nucar Real Estate would not purchase the real estate and Plaintiff Nucar would not purchase the Dealerships' assets unless both remained satisfied that the Dealerships' financial condition was as represented. Rothrock intended for Plaintiffs to make the same decisions based upon the same representations and warranties.

78.    In this regard, Plaintiff Nucar was a contracting party under the APA and Plaintiff Nucar Real Estate was a third-party beneficiary under the APA.

79.    Rothrock materially breached its contractual obligation to both Plaintiffs by falsely representing that Nucar had to add pack monies to the Dealerships' reported income figures in order to understand their true financial status. In fact, the pack monies had already been accounted for in income. These funds had already been accounted for in the financial statements provided Plaintiffs, and now were being double-counted. Stated differently, Rothrock had grossly overstated the income and thereby the financial performance of the Dealerships.

80.    Rothrock further breached its contractual obligations under the APA by delivering the Closing Certificate pursuant to Section 19(b)(ii)(E) of the APA, attesting that "representations and warranties of Seller contained in Section 8 of the Agreement were true and correct in all material respects when made, and are true and correct in all material respects on and as of the date hereof…."  Rothrock was aware at the time it executed and delivered the Closing Certificate to Plaintiffs that it had made false representations to Plaintiffs as to the financial condition of the Dealerships.

81.    As a result of Rothrock's breaches of its contractual obligations, Plaintiff Nucar was caused to purchase business assets materially inferior to what they were represented to be, and Plaintiff Nucar Real Estate was caused to purchase commercial real estate materially less valuable than what its highest and best use would otherwise be.

82.    The APA and P&S are capable of being rescinded and unwound, and the parties can be restored to the condition they were in before Rothrock's tortious activities took place.

83.    The APA and P&S are voidable contracts that can be rescinded, and the parties can be returned to the condition they were in prior to Plaintiffs' purchase of the Dealerships' business assets and the real estate upon which they are located and the Dealerships operate.

84.    In the alternative to recission, Plaintiffs suffered and are entitled to compensatory and consequential damages and an award and recovery from Rothrock, jointly and severally, for indemnifiable "Losses" as defined in the APA. *See* **Exhibit A (APA) § 17.1**. These losses include without limitation, overpayment for the Dealerships' assets and the related real estate, the transactional costs associated with entering into and closing on the APA and P&S, losses and negatively impacted profits incurred in the operation of the Dealerships and related real estate post-closing of the APA, and the costs and expenses associated with investigating and addressing Rothrock's breaches of its representations and warranties and fraudulent conduct, including, without limitation, forensic investigation fees and costs and attorneys' fees and costs.  All of the foregoing losses have been incurred or suffered by Plaintiffs and are not contingent or otherwise unestablished.

85.    Despite Plaintiffs legal entitlement to and demand for indemnification, Rothrock refused and continues to refuse to provide indemnification.

86.    In accordance with the APA's dispute resolution procedures, Plaintiffs submitted a timely demand to Rothrock for indemnification and related relief, which remains unsatisfied. All conditions precedent prior to the commencement of suit have been satisfied.

87.    Under Section 17.1 of the APA, all of the Defendants, including the individual Defendants, are liable to Plaintiffs in connection for the breaches of the APA and resulting indemnity obligations recited above. *See* **Exhibit A (APA) § 17.1**.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for complete rescission of the January 29, 2024 Asset Purchase Agreement for the Dealerships' business assets and the Purchase and Sale Agreement for the related real estate, including any and all associated restitution and ancillary costs, or, alternatively, compensatory and consequential damages, indemnifiable "losses" as provided for in the APA, and attorney's fees and costs in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.

## COUNT II – FRAUDULENT MISREPRESENTATION

88.    Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

89.    For the purpose of inducing Plaintiffs to purchase the Dealerships' business assets and related real estate, Rothrock intentionally and falsely represented the financial state of the Dealerships to Plaintiffs during the APA's contractually-prescribed due diligence period, as well as the period following due diligence and running up to closing during which Plaintiffs still had a

right to terminate the APA and P&S albeit for a cost. And unbeknownst to Plaintiffs due to Rothrock's intentional concealment, these *mid-contract* false representations echoed, expanded upon, and followed similar misrepresentations as to the financial state of the Dealerships conveyed by Defendants to the Plaintiffs in the time before they executed the APA and P&S.

90.     After Plaintiffs entered into the APA and P&S with Rothrock, Rothrock repeatedly informed Plaintiffs *during due diligence* and *the period from the expiration of diligence up through closing* that the pack monies taken into income were not reflected in the financial statements supplied to Plaintiffs by Defendants and needed to be added to the revenue and income for the Dealerships to accurately understand the Dealerships' financial performance. This misdirection was a bald-faced lie as the Dealerships' financial statements provided to Plaintiffs already reflected substantial pack monies taken into income, resulting in Plaintiffs having a distorted, grossly inaccurate, and overly profitable picture of the Dealerships' financial performance.

91.     Although Rothrock's actions violated express duties from the APA, they *further* violated an independent societal obligation *under common law* separate from any contract.

92.     As a result of Rothrock's intentionally false representations, Plaintiffs were induced to allow their due diligence rights and post-due diligence rights (which provided them with the right to terminate both the APA and P&S without completing the purchases contemplated thereby) to lapse and to close on the purchase of the Dealerships' assets and related real estate.

93.     As a direct and proximate result of Rothrock's actions, Plaintiffs reasonably and detrimentally relied on materially false financial information about the Dealerships provided after execution of the APA, and allowed their termination rights with respect to the APA and P&S to expire, proceeding to close upon (i) the purchase of the Dealerships (that Nucar otherwise would

have never bought) that were financially inferior to their understanding and intent and (ii) the purchase of financially inferior real estate (that Nucar Real Estate otherwise would have never bought) to their understanding and intent, and thereby suffered losses in an estimated amount over seven figures.

94.    Rothrock's misrepresentations were intentional, calculated, and outrageous. They deceived Plaintiffs for the sole purpose of obtaining unearned profit in reckless indifference to the rights of others.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for complete rescission of the January 29, 2024 Asset Purchase Agreement for the Dealerships' business assets and the Purchase and Sale Agreement for the related real estate, including any and all associated restitution and ancillary costs, or, alternatively, compensatory, consequential and punitive damages, indemnifiable "losses" as provided for in the APA, and attorney's fees and costs in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.

## COUNT III – FRAUDULENT CONCEALMENT

95.    Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

96.    During Plaintiffs' due diligence investigation of the Dealerships' financial condition following execution of the APA, and during the contractual period between the expiration of due diligence and closing, they made repeated inquiries of Rothrock intended to

better understand how Rothrock took pack monies into income and the overall financial picture for the Dealerships, including their profits.

97.     Rothrock fraudulently misrepresented to Plaintiffs during the due diligence period and post-due diligence/pre-closing period that the income and profit figures in the financial data they supplied did ***not*** include any pack monies in income.  This fraudulent disclosure caused the Dealerships' overall financial picture, including annual net profit, to appear more positive to Plaintiffs than it was in reality.

98.     In a calculated effort to thwart a more searching inquiry, Rothrock informed Plaintiffs following execution of the APA and P&S that pack monies were not taken into income by Rothrock until the 13th month and that all financial information supplied to Plaintiffs failed to account for the same (i.e. that the pack monies needed to be added to the income and revenue figures supplied in order for Plaintiffs to understand the "true" and accurate financial picture for the Dealerships).  Rothrock made these statements in an effort to conceal the truth regarding the Dealerships financial state from Plaintiffs.

99.     But in truth, the 13th month statements did not reconcile anything or reflect the inclusion for the first time of pack monies for the preceding calendar year in income; they reflected pack monies as income to the Dealerships that had already been taken into income on a rolling basis and already included in the financial statements prepared throughout the fiscal year that were shared, but misrepresented, with Plaintiffs during due diligence and the post-due diligence contractual period.

100.    At all pertinent times after execution of the APA, Rothrock knew that it was subject to a written warranty and representation on which Plaintiffs were relying, promising that all information disclosed and explanations provided in due diligence as well as the post-due diligence

contractual period were not only literally true, but was complete and without material *omission* so as not to be misleading.

101.    By concealing the falsity of the financial information supplied to Plaintiffs which overstated the income and profit figures for the Dealerships, Rothrock took advantage of the trust contractually instilled on it, and misled Plaintiffs to their detriment.

102.    Rothrock had a separate and independent duty under Pennsylvania law (as guided by application of the Restatement (Second) of Torts § 550) to disclose material facts to Plaintiffs concerning the Dealerships' true income and profitability, including the treatment of pack monies.

103.    Rothrock breached its duty at common law by actively concealing the true income and revenues of the Dealerships during due diligence and the post-due diligence contractual period, while affirmatively, intentionally, and falsely instructing Plaintiffs to add pack monies to the data supplied in a manner that grossly inflated the Dealerships' financial performance.

104.    At all pertinent times after execution of the APA, Rothrock knew that it had made repeated representations that were materially misleading and relied upon by Plaintiffs and failed to disclose the true financial status of the Dealerships. It had an obligation to correct its misleading representations, and instead actively concealed them from Plaintiffs up through the closing.

105.    At all pertinent times following execution of the APA, Rothrock knew that its practices and instruction to Plaintiffs to add pack monies to income and revenue that were already reflected in the data provided Plaintiffs grossly distorted the Dealerships' reported net income and overall financial picture, facts basic to the business asset and real estate transactions at issue. Rothrock also knew that Plaintiffs were relying upon such material misrepresentations during the due diligence and post-due diligence contractual period under the APA in deciding whether or not to terminate such agreement and the P&S or to proceed to close upon the same, and failed to correct

the misstatements. Defendants' misrepresentations and decision to not disclose to Plaintiffs and correct the same during these two periods was intentional, calculated, and designed to induce Plaintiffs to enter into and consummate the APA and P&S and to forgo their contractual right to terminate the transactions.

106.    Defendants knew that Plaintiffs were proceeding under a material misunderstanding concerning the Dealerships' true income and profitability, that this mistake went to the heart of the transaction, and that Plaintiffs reasonably expected full and accurate disclosure, particularly in light of Defendants' express representations and warranties in the APA that the information supplied would not omit material facts necessary to make the disclosures not misleading.

107.    Rothrock's actions violated express duties in the APA, and separately its common law duties not to lie to and make material misrepresentations or omissions in their business engagement with Plaintiffs, an independent societal obligation separate from any contract.

108.    As a direct and proximate result of Rothrock's actions, Plaintiffs reasonably and detrimentally relied on materially false financial information about the Dealerships that were financially inferior to their understanding and intent, and closed upon agreements to purchase the Dealerships and associated real estate and that were financially inferior to their understanding and intent, and thereby suffered losses in an estimated amount between seven and eight figures.

109.    Rothrock's misrepresentations and its failure to disclose and correct the same during the post-contract period in which Plaintiffs could have avoided purchasing the Dealerships and associated real estate were intentional, calculated, and outrageous. It deceived Plaintiffs for the sole purpose of obtaining unearned profit in reckless indifference to the rights of others.

110.     As a result of Rothrock's misrepresentations and concealment, Plaintiffs own two dealerships and related real estate that they never would have otherwise purchased.  In the year following the Closing, the Dealerships operated substantially below the financial performance projected by the information supplied by Rothrock to Plaintiffs, who relied upon the false representations from Rothrock as to their financial condition.

111.     The APA and P&S are capable of being unwound, and the parties can be restored to the condition they were in before Rothrock's tortious activities took place.

112.     The APA and P&S are voidable contracts that can be rescinded, and the parties can be returned to the condition they were in prior to Plaintiffs' purchase of the Dealerships' business assets and the real estate upon which they are located and the Dealerships operate.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for complete rescission of the January 29, 2024 Asset Purchase Agreement for the Dealerships' business assets and the Purchase and Sale Agreement for the related real estate, including any and all associated restitution and ancillary costs, or, alternatively, compensatory, consequential and punitive damages, indemnifiable "losses" as provided for in the APA, and attorney's fees and costs in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.

### COUNT IV – FRAUDULENT NONDISCLOSURE

113.     Plaintiffs incorporate the above-stated averments as though they were repeated herein at length.

114.    During Plaintiffs' due diligence investigation of the Dealerships' financial condition following execution of the APA, and the post-due diligence/pre-closing period during which Plaintiffs maintained the ability to terminate the APA and P&S albeit for a Default penalty, it made repeated inquiries of Rothrock intended to better understand how Rothrock took pack monies into income and the overall financial picture for the Dealerships, including their profits.

115.    Rothrock fraudulently misrepresented to Plaintiffs during the due diligence and post-due diligence contractual periods under the APA that the income and profit figures in the financial data they supplied did *not* include pack monies in income.  This fraudulent disclosure caused the Dealerships' overall financial picture, including annual net profit, to appear more positive to Plaintiffs than it was in reality.

116.    In a calculated effort to thwart a more searching inquiry, Rothrock informed Plaintiffs during due diligence and the post-due diligence contractual period under the APA that pack monies were not taken into income by Rothrock until the 13th month and that all financial information supplied to Plaintiffs failed to account for the same (i.e. that the pack monies needed to be added to the income and revenue figures supplied in order for Plaintiffs to understand the "true" and accurate financial picture for the Dealerships).  Rothrock made these statements in an effort to conceal the truth regarding the Dealerships' financial state from Plaintiffs.

117.    But in truth, the 13th month statements did not reconcile anything or reflect the inclusion for the first time of pack monies for the preceding calendar year in income; they reflected pack monies as income to the Dealerships that had already been taken into income on a rolling basis and already included in the financial statements prepared throughout the fiscal year that were shared with Plaintiffs during due diligence.

118.    At all pertinent times after execution of the APA, Rothrock knew that it was subject to a written warranty and representation on which Plaintiffs were relying, promising that all information disclosed and explanations provided in due diligence were not only literally true, but was complete and without material *omission* so as not to be misleading.

119.    By failing to correct their misstatements to Plaintiffs that they were supplied overstated income and profit figures for the Dealerships, Rothrock took advantage of the trust contractually instilled on it, and misled Plaintiffs to their detriment.

120.    Rothrock had a separate and independent duty under Pennsylvania common law (as guided by application of the Restatement (Second) of Torts § 551) to disclose material facts to Plaintiffs concerning the Dealerships' true income and profitability, including the treatment of pack monies.

121.    Rothrock breached its duty at common law by failing to disclose that pack monies for the Dealerships had already been included in income in the financial information supplied to Plaintiffs during due diligence and the post-due diligence contractual period, while affirmatively instructing Plaintiffs to add those same amounts to understand the Dealerships' "true" financial performance.

122.    At all pertinent times before and after execution of the APA, Rothrock knew that it had made repeated representations that were materially misleading and relied upon by Plaintiffs and failed to disclose the true financial status of the Dealerships. It had an obligation to correct its misleading representations and did not.

123.    Defendants knew that Plaintiffs were proceeding under a material misunderstanding concerning the Dealerships' true income and profitability, that this mistake went to the heart of the transaction, and that Plaintiffs reasonably expected full and accurate disclosure,

particularly in light of Defendants' express representations and warranties in the APA that the information supplied would not omit material facts necessary to make the disclosures not misleading.

124.    At all pertinent times following execution of the APA, Rothrock knew that its practices and instruction to Plaintiffs to add pack monies to income and revenue that were already reflected in the data provided Plaintiffs grossly distorted the Dealerships' reported net income and overall financial picture, facts basic to the business asset and real estate transactions at issue. Rothrock also knew that Plaintiffs were relying upon such material misrepresentations during the period of due diligence under the APA in deciding whether or not to terminate such agreement and the P&S during the due diligence period or the post-due diligence contractual period or to proceed to closing upon the same, and failed to correct the misstatements. Defendants' misrepresentations and decision to not disclose to Plaintiffs and correct the same during the period of due diligence or the post-due diligence contractual period was intentional, calculated, and designed to induce Plaintiffs to enter into and consummate the APA and P&S and to forgo their contractual right to terminate the transactions.

125.    Rothrock's actions violated express duties in the APA, and separately its common law duty not to lie to and defraud Plaintiffs, an independent societal obligation separate from any contract.

126.    As a direct and proximate result of Rothrock's actions, Plaintiffs reasonably and detrimentally relied on materially false financial information about the Dealerships that were financially inferior to their understanding and intent, and closed upon agreements to purchase the Dealerships and associated real estate and that were financially inferior to their understanding and intent, and thereby suffered losses in an estimated amount between seven and eight figures.

127.    Rothrock's misrepresentations and its failure to disclose and correct the same during the post-contract period in which Plaintiffs could have avoided purchasing the Dealerships and associated real estate were intentional, calculated, and outrageous. It deceived Plaintiffs for the sole purpose of obtaining unearned profit in reckless indifference to the rights of others.

128.    As a result of Rothrock's misrepresentations and material omissions, Plaintiffs own two dealerships and related real estate that they never would have otherwise purchased.  In the year following the Closing, the Dealerships operated substantially below the financial performance projected by the information supplied by Rothrock to Plaintiffs, who relied upon the false representations from Rothrock as to their financial condition.

129.    The APA and P&S are capable of being unwound, and the parties can be restored to the condition they were in before Rothrock's tortious activities took place.

130.    The APA and P&S are voidable contracts that can be rescinded, and the parties can be returned to the condition they were in prior to Plaintiffs' purchase of the Dealerships' business assets and the real estate upon which they are located and the Dealerships operate.

WHEREFORE, Plaintiffs DCD NUCAR ALNI LLC and DCD RE Plaza Lane LLC respectfully demand that judgment be entered in their favor and against Defendants Rothrock Motor Sales, Inc.; David B. Rothrock, both individually and in his capacity as the Executor of the Estate of Bruce L. Rothrock, Sr.; Bruce L. Rothrock, Jr., Dean A. Rothrock; Rock Real Estate Holdings, LLC; and Rock Real Estate Family Partners, LP for complete rescission of the January 29, 2024 Asset Purchase Agreement for the Dealerships' business assets and the Purchase and Sale Agreement for the related real estate, including any and all associated restitution and ancillary costs, or, alternatively, compensatory, consequential and punitive damages, indemnifiable "losses"

33832474.5

as provided for in the APA, and attorney's fees and costs in an amount in excess of the bounds of L. Civ. R. 53.2 arbitration.


Date: December 29, 2025                                        Respectfully submitted,


                                                              /s/ William E. Gamgort
                                                              William E. Gamgort, Esq.
                                                              Atty. ID No. 207777
                                                              Young Conaway Stargatt & Taylor, LLP
                                                              Rodney Square
                                                              1000 North King Street
                                                              Wilmington, DE 19801
                                                              (p) 302-576-3267
                                                              wgamgort@ycst.com


                                                              /s/ Travis A. Gold
                                                              Travis A. Gold, Esq.
                                                              Atty. ID No. 316765
                                                              Law Offices of Gold & Gold
                                                              237 South York Road
                                                              Hatboro, PA 19040
                                                              (p) 215-672-2458
                                                              (f) 215-672-9460
                                                              travis@hatborolawyer.com

33832474.5