UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

DCD NUCAR ALNI LLC, individually and as :
successor by merger to DCD NUCAR ALCD LLC, :
and DCD RE PLAZA LANE LLC, :
                Plaintiff, :
                 :
          v. : No. 5:25-cv-4327
                 :
ROTHROCK MOTOR SALES, INC., :
DAVID B. ROTHROCK, individually and on :
behalf of THE ESTATE OF BRUCE L. :
ROTHROCK, SR., BRUCE L. ROTHROCK, JR, :
DEAN A. ROTHROCK, :
ROCK REAL ESTATE HOLDINGS, LLC, and :
ROCK REAL ESTATE FAMILY PARTNERS, LP,:
           Defendants. :

_____

## **O P I N I O N**

**Defendants' Motion to Dismiss Amended Complaint, ECF No. 31 – Granted**

**Joseph F. Leeson, Jr.**                            **March 23, 2026**
**United States District Judge**

## I.      INTRODUCTION

Plaintiffs DCD Nucar Alni LLC and DCD RE Plaza Lane LLC filed an Amended

Complaint against Defendants, Rothrock Motor Sales, Inc., David B. Rothrock, Bruce L.

Rothrock Jr., Dean A. Rothrock, Rock Real Estate Holdings, LLC, and Rock Real Estate Family

Partners, LP, in which they allege breach of contract and three fraud counts relating to the

purchase and sale of two Lehigh County automobile dealerships. Plaintiffs claim that Defendants

intentionally misrepresented the financial performance of the dealerships, leading Plaintiffs to

purchase the dealerships under false pretenses and causing them to suffer unanticipated financial

losses. Defendants now move to dismiss the fraud counts. For the following reasons, the Motion

will be granted.

## II.    BACKGROUND

### A.  Factual Allegations

For years, Daniel and Christopher Dagesse[1] were successful operators of more than twenty-five automotive dealerships in states other than Pennsylvania. Am. Compl., ECF No. 30, at ¶¶ 14, 19. Rothrock Motor Sales, Inc. ("Rothrock") had been operating car dealerships in Pennsylvania since the 1960s. *Id.* at ¶ 16. In early October 2023, the Dagesses were approached by a broker about the sale of two automobile dealerships in Allentown, Pennsylvania (the "Dealerships"), *id.* at ¶ 14, which were owned by Rothrock, *id.* at ¶ 3. On October 23, 2023, the broker provided Daniel Dagesse with a pitch deck containing financial information about the Dealerships (the "Pitch Deck"). *Id.* at ¶ 15. The Pitch Deck "contained specific revenue, expense, and net profit figures for the Dealerships, combined, for the years 2020 through the third quarter of 2023," *id.* at ¶ 20, and detailed "Profit Performance" for the Dealerships, including three years of adjusted profit figures, *id.* at ¶ 22, represented as follows: $1,519,516 in 2020; $6,402,303 in 2021; $2,860,662 in 2022; and $3,192,727 YTD (9 months) or $4,256,969 (annualized) in 2023, *id.* at ¶ 23.[2] The Pitch Deck also contained information on "Pack Adjustments," defined as follows:

---

[1]    Christopher Dagesse is a member of DCD Nucar Alni LLC, which is the successor by merger to DCD Nucar ALCD LLC. Am. Compl. ¶ 1, ECF No. 30. Prior to the merger, DCD Nucar Alni LLC and DCD Nucar ALCD LLC were the purchasers of the Dealerships at issue in this case. *Id.*

[2]    Under Rule 12(b)(6), a court must accept all factual allegations of the nonmoving party as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The profit figures stated here thus reflect those in the Amended Complaint, the operative pleading in this case. *See id.* at ¶ 23. Though, the Court notes that these dollar amounts differ from the profit figures stated in the Complaint, *see* Compl. ¶ 23, ECF No. 1, and as stated in the Court's Opinion of December 8, 2025, *see* ECF No. 25 at 2, which accepted the allegations in the Complaint as true. *See also* Def. Br. 2, ECF No. 32 ("Curious, however, is the fact that 'the Adjusted Profits for the Dealerships for the 2020-2023 period' alleged in the Amended Complaint are nearly $8.7 million more than those that were alleged in Plaintiffs' initial Complaint in this action.").

> In the automotive industry, a "pack" is a predetermined expense added by a dealer to the invoice price of a vehicle that is intended to account for overhead expenses such as rent, advertising, and vehicle reconditioning, and it reduces the revenue generated by the vehicle before a salesperson's commission is calculated. Most dealerships, including those operated by Rothrock, utilize multiple "packs." Pack monies are also taken into income by a dealership and customarily "earned" and effective at the time a vehicle is sold.

Am. Compl. at ¶ 24.[3]

"[A]fter reviewing the information the Pitch Deck conveyed, Plaintiffs decided that the Dealerships presented a potentially attractive opportunity." *Id.* at ¶ 25 (emphasis omitted). When Plaintiffs inquired as to how Defendants took pack monies into income, the broker responded, "Seller's W2 and or dealership income on the 13th month stmt…." *Id.* at ¶ 26. Plaintiffs understood the "13th month" to be "an accounting concept in the automotive industry to record year-end items" (like adjustments), *id.* at ¶ 26 n.1, and interpreted the broker's response as indication that "the adjusted revenue and income figures supplied did not include the pack monies in income," *id.* at ¶ 26 (emphasis omitted). Satisfied with Defendants' representations of the Dealerships' income, Plaintiffs entered into an Asset Purchase Agreement for the assets of the Dealerships (the "APA" or "Agreement"), and a Purchase and Sale Agreement for the real estate upon which the Dealerships operate (the "PSA"), (collectively the "Agreements").[4] *Id.* at ¶ 27. The APA and PSA were "finalized and executed" on January 29, 2024. *Id.* at ¶ 29.

Between January 29, 2024 and May 1, 2024, Plaintiffs asked Defendants for clarification regarding the financial information in the Pitch Deck, namely about Rothrock's treatment of pack monies. *Id.* at ¶¶ 42-43. On or about February 9, 2024, Defendants gave Plaintiffs access to

---

[3]    "The Pitch Deck also showed that Rothrock characterized a significant fraction of the Dealerships' annual net profits as 'Add-Backs,' and that by far the largest 'Add-Back' component in every year was a 'Pack Adjustment.'" Am. Compl. at ¶ 21.

[4]    The "purchase of the real estate under the [PSA] was expressly contingent on the parties simultaneously closing on the Dealerships under the APA." *Id.* at ¶ 28.

certain financial data which "appeared to [Plaintiffs] to echo and be consistent with the pre-APA Pitch Deck." *Id.* at ¶ 46. On or about February 13, 2024, Defendants provided Plaintiffs with an "Inventory Pack Listing" which detailed "all the pack monies that Rothrock utilized and how and where they were reflected in the Dealerships' financial statements." *Id.* at ¶ 47. On February 18, 2024, when Plaintiffs asked about a particular $1,500,000 pack adjustment in the financial statements they received, *id.* at ¶ 48, David Rothrock responded:

> These amounts are added to the cost of the vehicles and set up as liabilities on the balance sheet in the previously indicated accounts. The pack adjustments add back represents the unused portion of these packs that are remaining on the balance sheet. These amounts are then adjusted into income in the 13th month each year for tax reporting purposes.

Am. Compl. at ¶ 49.

Over the coming weeks, David Rothrock "repeatedly told [Plaintiffs] both orally and in writing that the pack monies must be added back to adjusted net income figures provided to Nucar to understand the 'true' income and profit of the Dealerships." *Id.* at ¶ 44. On February 27, 2024, Defendants provided Plaintiffs with a spreadsheet titled "Vehicle Packs," which "detailed all vehicle packs that Rothrock had used since 2022 and the amounts set for each as specific line items." *Id.* at ¶ 50. It indicated that the pack monies were not reflected in income on monthly financial statements, but were rather "taken into income in a 13th month statement." *Id.* On March 11, 2024, David Rothrock confirmed that Plaintiffs needed to add the pack monies to the adjusted net income data for fiscal year 2022 to have an accurate picture of the Dealerships' income for 2022. *Id.* at ¶¶ 51-52. Plaintiffs understood this to mean that pack monies were not reflected in the Dealerships' income, but rather, were only accounted for in the 13th month financial statements. *Id.* at ¶ 53.

The sale of the Dealerships' assets and real estate property, pursuant to the APA and PSA, closed on May 1, 2024. *Id.* at ¶ 56. At closing, Defendants delivered to Plaintiffs a signed Certificate of its representations and warranties that stated:

> All representations and warranties of Seller contained in Section 8 of the Agreement were true and correct in all material respects when made, are true and correct in all material respects on and as of the date hereof as if made as to the date hereof (except in each case for those representations and warranties which address matters only as of a particular date, which representations and warranties are true and correct in all material respects as of such particular date).

*Id.* at ¶ 56 (emphasis omitted); Closing Cert., ECF No. 30-7. After closing, Plaintiffs noticed that the Dealerships' profits were "significantly less than expected" when compared to the projected data from Defendants. Am. Compl. at ¶ 59. Plaintiffs looked into the general ledger entries for a period not included in the pre-closing financials, and discovered that Defendants had not only included pack monies in their monthly income calculations (rather than including them only in the 13th month calculation), but had done so in the revenue figures supplied to Plaintiffs pre-closing. *See id.* at ¶ 60. Plaintiffs hired an accounting firm to conduct a forensic review of the Dealerships' financials, *id.* at ¶ 61, which revealed "that the financial records supplied to [Plaintiffs] prior to the closing of the APA and [PSA] . . . in fact already accounted for the majority of pack monies in the Dealership[s'] income for all years under consideration during due diligence, 2020-2024," *id.* at ¶ 62, resulting in "material overstatements of the Dealerships' income for the operational years under examination," *id.* at ¶ 64. Since purchasing the Dealerships and related real estate, Plaintiffs report financial losses of over seven figures. *Id.* at ¶¶ 93, 108, 126.

### B. Provisions in the APA[5]

The APA contains the following provisions regarding the representations and warranties

of Defendants:

> **8. REPRESENTATIONS AND WARRANTIES OF SELLER**. Seller makes the following representations and warranties to Buyer in order to induce Buyer to enter into and consummate this Agreement as contemplated herein and Seller hereby represents and warrants the following to be true on the Effective Date and as of the Closing Date:
>
> […]
>
> **8.23. Disclosures**. No representation or warranty or other statement made by Seller in this Agreement, nor any written statement, schedule or exhibit furnished or to be furnished by or on behalf of Seller pursuant to this Agreement, nor any document or certificate delivered to Buyer pursuant to this Agreement, contains or shall contain any untrue statement of a material fact or omits or shall omit to state a material fact necessary to make the statements contained therein not misleading.

Am. Compl. at ¶ 40 (bolding omitted) (quoting APA §§ 8; 8.23, ECF No. 30-2). The APA also

contains the following information regarding Plaintiffs' right to investigate the Dealerships'

financial information, and to terminate the Agreement during the parties' due diligence period:

> **10.14. Due Diligence Investigation.**
>
> During the period that commences on the Effective Date and ends on the earlier of the Closing Date or the termination of this Agreement . . . Seller shall permit Buyer and its authorized representatives to make such reasonable investigation of the Dealership Business's financial and operating data[.]
>
> […]

---

[5]     The Court has been provided with a copy of the Asset Purchase Agreement ("APA"), dated January 29, 2024, appended as "Exhibit A" to the Amended Complaint. *See* APA, ECF No. 30-2. The Court is also in receipt of copies of the First Amendment to the APA, dated March 3, 2024 and appended as "Exhibit C," *see* Am. APA, ECF No. 30-4; the Second Amendment to the APA, dated March 6, 2024 and appended as "Exhibit D," *see* 2d Am. APA, ECF No. 30-5; and the Third (and final) Amendment to the APA, dated March 8, 2024 and appended as "Exhibit E," *see* Final APA, ECF No. 30-6. This Court may consider the provisions of the APA in deciding the Rule 12(b)(6) motion before it, as such is in accordance with the applicable standard of review. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

For a period of fourteen (14) days from the Effective Date, or upon the earlier termination of this Agreement, as the case may be (the "Financial Due Diligence Period"), Buyer and Buyer's authorized representatives shall have access to Seller's CPA, Robert Seibel, CPA of Voynow Bayard & Company. Seller shall furnish to Buyer and its authorized representatives such financial and operating data and other information with respect to the Dealership Business and the Acquired Assets as Buyer may reasonably request. Seller shall cooperate fully with Buyer and its authorized representatives and make a disclosure to Buyer of all material facts regarding the Dealership Business, the Acquired Assets and the Buyer's Financial Due Diligence investigation.

[…]

Buyer shall have the right to terminate this Agreement by written notice to Seller and Escrow Agent sent on or before 5pm EST on the final day of the Due Diligence Period, in its sole subjective and reasonable discretion, for any reason or no reason whatsoever. In the event that Buyer terminates this Agreement pursuant to the provisions of this Section 10, the Deposit shall be promptly returned to Buyer by Escrow Agent and no party hereto shall have any further obligations or liabilities hereunder to any other party hereto, except to the extent they survive hereunder by their own terms, and this Agreement shall be and become null and void and of no further force and effect at law or in equity.

APA § 10.14; *see also* Am. Compl. ¶¶ 35-36 (quoting APA § 10.14). The APA also features the following integration clause:

**30. <u>ENTIRE AGREEMENT</u>**. This Agreement together with the EXHIBITS and SCHEDULES annexed hereto (which are incorporated herein by this reference) and the documents delivered pursuant hereto, are intended by the parties as a final expression of their understanding and/or a complete and exclusive statement of the terms and conditions concerning the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether written or oral, of the parties; and there are no representations, warranties, or other agreements between the parties in connection with the subject matter hereof, except as specifically set forth herein or therein.

APA § 30. Leading up to March 8, 2024, the APA was amended three times. The First Amendment to the APA was dated March 3, 2024, and extended the due diligence period to Wednesday, March 6, 2024, *see* Am. APA, ECF No. 30-4; the Second Amendment to the APA was dated March 6, 2024, and extended the due diligence period to March 8, 2024, *see* 2d Am. APA, ECF No. 30-5; the Third (and final) Amendment to the APA was dated March 8, 2024,

and allowed for the exchange of certain ongoing diligence deliverables between the parties beyond the designated due diligence period, *see* Final APA, ECF No. 30-6.

### C. Provisions in the PSA[6]

The PSA also contained the following provision explaining its relationship to the APA, and to what extent the two Agreements are contingent on each other:

> **20. Asset Purchase Agreement.** Neither party is obligated to close the transactions contemplated by this Agreement, unless the transactions contemplated by the Asset Purchase Agreement are closing simultaneously herewith. In the event that this Agreement is terminated for any reason, the Asset Purchase Agreement shall also be simultaneously terminated.

PSA § 20. Plaintiffs assert that, taken together, these provisions in the Agreements allowed them in the period "[b]etween January 29, 2024 and March 8, 2024" to "terminate the APA and [PSA] and avoid purchasing these assets from Defendants at no cost to themselves," Am. Compl. at ¶ 38, because during those months, "Plaintiffs were tasked with deciding whether to proceed with Closing on this Business and Property purchase or not," *id.* at ¶ 37.

### D. Procedural History

On July 30, 2025, Plaintiffs DCD Nucar Alni LLC and DCD RE Plaza Lane LLC filed a Complaint in this Court against Defendants Rothrock Motor Sales, Inc., David B. Rothrock (individually and on behalf of the Estate of Bruce L. Rothrock, Sr.), Bruce L. Rothrock, Jr., Dean A. Rothrock, Rock Real Estate Holdings, LLC, and Rock Real Estate Family Partners, LP, alleging claims of rescission, breach of contract, indemnification, fraudulent misrepresentation,

---

[6]    The Court has been provided with a copy of the Purchase and Sale Agreement ("PSA"), appended as "Exhibit B" to the Amended Complaint. *See* PSA, ECF No. 30-3. This Court may consider the provisions of the PSA in deciding the Rule 12(b)(6) motion before it, as such is in accordance with the applicable standard of review. *See Mayer*, 605 F.3d at 230 ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

fraudulent concealment, and fraudulent nondisclosure. *See* Compl., ECF No. 1. On August 25, 2025, Defendants filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 20. On December 8, 2025, this Court granted and denied, in part, Defendants' first Motion to Dismiss, dismissing the rescission and indemnification claims with prejudice, dismissing the fraud claims without prejudice, and allowing the breach of contract claim to proceed. *See* ECF Nos. 25-26.

Plaintiffs filed an Amended Complaint on December 29, 2025, and now allege claims of breach of contract, fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure (Counts I – IV, respectively). *See* Am. Compl. Plaintiffs assert that Defendants fraudulently misrepresented their treatment of pack monies and inflated the Dealerships' financial data, causing Plaintiffs to overvalue the Dealerships and the connected real estate. *Id.* at ¶¶ 52, 54. Plaintiffs maintain that Defendants breached their obligations under the APA by "attesting" that "representations and warranties of Seller contained in Section 8 of the Agreement were true and correct in all material respects when made . . . and as of the date hereof," *id.* at ¶¶ 56, 80, and that Defendants fraudulently induced Plaintiffs to close on the purchase of the Dealerships and related real estate, *see id.* at ¶¶ 54, 65-66, 92, 105, 124. Plaintiffs ask the Court to void and rescind the APA and PSA, or alternatively, to award Plaintiffs compensatory and consequential damages. *See id.* at ¶¶ 82-84.

On January 12, 2026, Defendants filed a (partial) Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), in which they seek to dismiss Counts II through IV with prejudice. *See* Motion, ECF No. 31; Memorandum of Law in Support of Defendants' Motion to Dismiss Amended Complaint, ECF No. 31-3; Amended Memorandum of Law in Support of Defendants' Motion to Dismiss Amended Complaint ("Def. Br."), ECF No. 32. In the

Motion, Defendants argue that the claims for fraudulent misrepresentation, concealment, and nondisclosure should be dismissed because the Amended Complaint fails to establish justifiable reliance, a necessary element of fraud, and because it fails to establish a duty of disclosure owed to Plaintiffs, as required for fraudulent concealment and fraudulent nondisclosure. *See id.* Defendants also assert that rescission is too drastic a remedy in this case, and that indemnification would be premature. *See id.* On January 26, 2026, Plaintiffs filed a Brief in Opposition to Defendants' Motion to Dismiss. *See* Pl. Br., ECF No. 33. On February 2, 2026, Defendants filed a Reply Brief in Support of their Motion to Dismiss. *See* ECF No. 34. The Court is now ready to render a decision on the Motion.

## III.   LEGAL STANDARDS

### A.      Motion to Dismiss under Rule 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678-79 (further explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding

a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and italicization omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.    Fraudulent Misrepresentation, Concealment, or Nondisclosure – Review of Applicable Law

Fraud arises where there is a "misrepresentation [that] is knowingly false, where there is an intentional concealment calculated to deceive, or where there is a nonprivileged failure to disclose." *Benevento v. Life USA Holding, Inc.*, 61 F. Supp. 2d 407, 421 (E.D. Pa. 1999) (citing *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989)). Under Pennsylvania law, a fraud claim must establish six elements: (1) the defendant made a misrepresentation or concealment; (2) "[w]hich [was] material to the transaction at hand;" (3) the misrepresentation or concealment was "[m]ade with knowledge of its falsity" or reckless disregard for the truth, or the concealment was "calculated to deceive"; (4) the defendant intended to "mislead[] another into relying on it;" (5) the plaintiff "[j]ustifiabl[ly] reli[ed] on the misrepresentation" or concealment; and (6) the plaintiff's injury was proximately caused by that reliance. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 n.12 (Pa. 1994); *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005)). Plaintiffs

alleging different types of fraud must prove these elements at base, and may also have additional proof requirements.

For example, "a claim for fraudulent inducement requires proof of the six elements and is available when a person under no duty to enter a contract was deceived into doing so." *SodexoMAGIC*, 24 F.4th at 206 (citing *College Watercolor Grp., Inc. v. William H. Newbauer, Inc.*, 360 A.2d 200, 206 (Pa. 1976) and Justin Sweet, *Promissory Fraud and the Parol Evidence Rule*, 49 Calif. L. Rev. 877, 888 (1961) ("Fraud in the inducement occurs when one party, by means of false statements of fact, warranties, or promises, misleads another into contracting.")). A claim for fraudulent concealment requires proof of the six elements of fraud and the existence of "a special relationship that would give rise to a duty to speak between them and the party that fraudulently concealed information." *Marcum v. Columbia Gas Transmission, LLC.*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019). A claim for fraudulent nondisclosure requires proving the six elements of fraud and the existence of a duty on the part of one party to exercise reasonable care to disclose the matter to the other. *See Youndt*, 868 A.2d at 550.[7]

Additionally, under the Federal Rules of Civil Procedure, there is a heightened pleading standard for fraud, as required by Rule 9(b), which provides that "a party must state *with particularity* the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b) (emphasis added). Consequently, it is necessary to "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation . . . and [to] allege who made a misrepresentation to whom and the general content of the misrepresentation."

---

[7]    Some courts applying Pennsylvania law have suggested that fraudulent "concealment" and fraudulent "nondisclosure" are merely different classifications for the same type of fraud. *See, e.g., City of Rome v. Glanton*, 958 F. Supp. 1026, 1038 (E.D. Pa. 1997) (using both terms interchangeably), *aff'd sub nom. City of Rome, Italy v. Glanton*, 133 F.3d 909 (3d Cir. 1997).

*Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 221 (3d Cir. 2016) (internal citations omitted). The purpose of the heightened standard "is to provide a defendant with notice of the precise misconduct with which he or she is charged and to prevent false or unsubstantiated charges." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 485 (E.D. Pa. 2016) (internal quotation and citations omitted).

## IV.    DISCUSSION

This Court's December 2025 Opinion found that Plaintiffs had met their initial pleading burden with respect to five of the six elements of fraud,[8] and granted Plaintiffs leave to amend their pleading to allege additional facts in support of the justifiable reliance element. *See* ECF No. 25. The thrust of that Opinion's analysis was concerned with Plaintiffs' inability to establish justifiable reliance where the APA was fully integrated and included a fraud-insulating provision. *See id.* at 17 ("[T]he parties have created a fraud-insulating provision. . . . By consenting to the inclusion of this clause, both sides affirm their intent to be bound by only the representations in the APA, and Plaintiffs are barred from arguing justifiable reliance on misrepresentations not featured in the integrated document."). The Court found that Section 30 of the APA, titled "Entire Agreement," indicated that the parties had disclaimed reliance on external representations when contracting for the sale of the Dealerships, and that the inclusion of this fraud-insulating provision signified that there were no material representations between the parties other than those in the APA. Defendants' Motion to Dismiss the Amended Complaint is now brought, in large part, pursuant to the same reasoning.[9] *See* Motion. Defendants argue that

---

[8]    The Court noted then, as it does now, that its findings with respect to the sufficiency of an operative pleading are limited to whether Plaintiffs allegations are sufficient to survive a motion to dismiss. Plaintiffs' claims may require greater proof at a later stage of litigation.

[9]    Defendants also argue in their Motion that Plaintiffs engage in impermissible group pleading by referring to Defendants collectively as "Rothrock" throughout their Amended

the Amended Complaint fails to allege facts in support of justifiable reliance because the "Entire

Agreement" provision prevents Plaintiffs from arguing that they relied on representations made

outside of the APA. *See* Def. Br. at 19-22. Upon review of the allegations in the Amended

Complaint, this Court agrees.

Even where the falsity of a representation is ascertainable by investigation, *see Bennett v.*

*Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 479 (E.D. Pa. 2010) ("The recipient of an allegedly

fraudulent misrepresentation is under no duty to investigate its falsity in order to justifiably

rely.") (citing *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007)), a recipient of a

fraudulent misrepresentation of fact may be justified in relying on its truth, *Lavecchia v.*

*Fleming*, 669 F. Supp. 3d 342, 348 (E.D. Pa. 2023) (quoting Restatement (Second) of Torts,

§ 540 (A.L.I. 1977)), *aff'd*, No. 23-1322, 2023 WL 8469764 (3d Cir. Dec. 7, 2023), but only to

the extent that its falsity is not obvious to, or known by, the recipient, *see id.* at 348 (quoting

Restatement (Second) of Torts, § 541 (A.L.I. 1977)). Pennsylvania's parol evidence rule

prevents a party from saying he "justifiably relied on prior representations that he has superseded

and disclaimed" under a fraud-insulating provision. *SodexoMAGIC*, 24 F.4th at 214; *see id.* at

215 ("Pennsylvania's parol evidence rule does not prevent fraudulent inducement claims for all

---

Complaint, without "refer[ring] to any individual Defendant." Def. Br. at 18. The Court is satisfied, at this motion to dismiss stage, that Plaintiffs have pleaded involvement in the alleged fraud by Defendants Rothrock Motors, David B. Rothrock, the Estate of Bruce L. Rothrock, Sr., Rock Real Estate Holdings, LLC, Bruce L. Rothrock, Jr., and Dean A. Rothrock, who acted as seller(s), authorized agent(s), limited partner(s), executor(s), shareholder(s), seller-related parties, and limited partners, with respect to the transaction. *See* Am. Compl. ¶¶ 3-10. Plaintiffs' requests for relief also identify each Defendant by name, and claim their involvement in the alleged fraud. *See id.* at ¶¶ 87, 94, 112, 130. Moreover, Plaintiffs allege several specific actions taken by Defendant David B. Rothrock which contributed to the alleged fraud, as well as the dates on which they took place. *See id.* at ¶¶ 44-45, 54-55. The Court is therefore unpersuaded by Defendants' argument regarding group pleading, and shall proceed with its review of whether the Amended Complaint meets the pleading requirements necessary to establish justifiable reliance.

integrated contracts, but the rule may preclude such claims based on misrepresentations for 'integration-plus' contracts – integrated contracts with fraud-insulating provisions."). Thus, a contract with a fraud-insulating provision makes it "virtually impossible to establish the justifiable-reliance element needed for a fraud claim." *Id.* at 214.

Here, the Amended Complaint alleges that several misstatements, concealments, or omissions were made to Plaintiffs during the contractual due diligence period of January 29, 2024 to May 1, 2024, particularly with regard to Defendants' treatment of pack monies in their yearly accounting for the Dealerships. *See* Am. Compl. ¶¶ 42-53. Plaintiffs emphasize their reliance upon the Pitch Deck and its financial information regarding "Pack Adjustments," *id.* at ¶¶ 23-24, as well as several affirmations made by Defendants during the due diligence period, by and through their agents and the broker, *see id.* at ¶¶ 26, 44, 46, 48-49, confirming that pack monies were added to the adjusted net income data for a given fiscal year "to have an accurate picture of the Dealerships' income" for that year. *Id.* at ¶¶ 51-52. Plaintiffs claim that they relied on these misrepresentations and omissions when deciding to enter into the Agreements. *Id.* at ¶¶ 93, 104, 108, 110, 122, 126. Defendants argue that this is insufficient to establish the justifiable reliance element needed for fraud because the alleged misrepresentations—namely, the treatment of pack monies and whether they were taken into a "13[th] month" statement for accounting purposes—were never reflected in writing in the APA. *See* Def. Br. at 21.

Defendants are correct that there is no mention of pack monies, the method of accounting for adjusted net income, or utilization of a 13th month statement, in the text of the APA. Rather, the "Entire Agreement" provision indicates that the written language of the APA (and only that language, with exhibits and schedules therein) is the "complete and exclusive statement of the terms and conditions" concerning the sale of the Dealerships; that such Agreement "supersedes

all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether written or oral, of the parties; and [that] there are no representations, warranties, or other agreements between the parties in connection with [its] subject matter." *See* APA § 30. The "Entire Agreement" provision reflects the parties' intention to be bound by, and rely upon, only that which appears within the four corners of the document. Plaintiffs are therefore barred by the parol evidence rule from introducing evidence of their reliance on external representations as proof that they were induced into contracting with Defendants. *See Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*, No. 22-1005, 2023 WL 4758449, at *5 n.10 (3d Cir. July 26, 2023) ("In Pennsylvania, 'fraud-in-the-inducement claims are commonly barred if the contract at issue is fully integrated.' This rule is based on the rationale that 'a party cannot justifiably rely upon prior oral representations and then sign a contract containing terms that refute the alleged prior oral representations.'") (quoting *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (internal quotations omitted)).

Notably, Plaintiffs also appear to assert that they justifiably relied on a representation *within the four corners* of the APA—the Seller's warranty that the information provided by Defendants to Plaintiffs pursuant to the APA (*i.e.*, during the contractual due diligence period) was true and accurate. *See* Am. Compl. at ¶¶ 40, 56, 58, 100, 118; *see also* Pl. Br. at 9, 17. Plaintiffs point to Section 8 of the APA and submit that they relied upon Defendants' statement that "[n]o representation or warranty or other statement made by Seller" in or pursuant to the Agreement "contains or shall contain any untrue statement of a material fact or omits or shall omit to state a material fact necessary to make the statements contained therein not misleading." *See* APA § 8.23. Yet this reliance allegation, alone, does not meet the particularity requirements of Rule 9(b). Plaintiffs may be able to point to Defendants' promise of truthfulness in the APA,

but they cannot point to a section of the APA that shows *which* of Defendants' representations were allegedly untrue. While it is clear from the Amended Complaint that Plaintiffs' argument is not based solely on their reliance on Section 8 of the APA,[10] but also their reliance on financial statements made during the due diligence period, it remains true that such statements were not included in the integrated Agreement. Thus, it is impossible to determine, on the face of the document, whether such reliance was *justified*. Because mere reliance is not enough, particularly between experienced corporations and industry professionals, the Court cannot find that the justifiable reliance element has been pleaded.[11] Without this, Plaintiffs are missing a required element of their fraud claims.[12] For these reasons, and because Plaintiffs do not argue an exception to the parol evidence rule, *see K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc.*, 689 F. Supp. 3d 35, 44 (E.D. Pa. 2023) ("There are four exceptions to the parol evidence

---

[10]    Plaintiffs' reliance on Section 8 of the APA, alone, would nevertheless be insufficient to prove justifiable reliance, as blind reliance on a representation (even a warranty of "truthfulness"), without examination or investigation, is not recoverable. *See* Restatement (Second) of Torts § 541 cmt. a (A.L.I. 1977).

[11]    In any case, these allegations made in support of the justifiable reliance element appear to speak more to breach of contract, as highlighted in Plaintiffs' pleadings, *see* Am. Compl. at ¶¶ 75-81; *see also* Compl. at ¶ 40, and as discussed by this Court in its December 2025 Opinion, *see* ECF No. 25 at 11-13 (deciding whether to allow the breach of contract claim to proceed). The Court will not analyze whether such fraud allegations may also be precluded by the gist of the action doctrine, however, because Counts II through IV sound in fraud in the inducement. *See Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*, No. 22-1005, 2023 WL 4758449, at *2 (3d Cir. July 26, 2023) ("[U]nder Pennsylvania law, the gist of the action doctrine 'precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.'") (quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super Ct. 2002), *distinguished on other grounds by Swatt v. Nottingham Vill.*, 342 A.3d 23, 52 (Pa. Super., Ct. 2025), *appeal denied*, No. 401 MAL 2025, 2025 WL 3770087 (Pa. Dec. 31, 2025)); *id.* at *4 ("Fraud in the inducement claims are ordinarily not barred by the gist of the action doctrine, 'because fraud to induce a person to enter into a contract is generally collateral to . . . the terms of the contract itself.'") (citing *eToll*, 811 A.2d at 17).

[12]    Because Plaintiffs have failed to demonstrate fraud, the Court will not endeavor to determine whether Plaintiffs have also established that Defendants owed Plaintiffs a duty to disclose certain information to them, as would be required to plead fraudulent concealment and fraudulent nondisclosure.

rule: extrinsic evidence may be used to modify contract terms of (1) an integrated contract when it is ambiguous or (2) to add contract terms omitted by fraud in the execution, (3) by accident, or (4) by mistake."), the Court finds that Plaintiffs have failed to allege evidence of justifiable reliance. *Battle Born Munitions*, 2023 WL 4758449, at *5 (3d Cir. July 26, 2023) ("When a contract has a fraud-insulating provision, 'it is virtually impossible to establish the justifiable-reliance element needed for a fraud claim.'") (citing *SodexoMAGIC*, 24 F.4th at 214). As Plaintiffs have before been given an opportunity to remedy this pleading deficiency, the Court finds that additional amendments would prove futile. Counts II, III, and IV will be dismissed with prejudice.[13] *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"), *abrogated on other grounds by*, *Iqbal*, 556 U.S. at 678.

## V.   CONCLUSION

Plaintiffs have failed to meet a necessary pleading requirement for fraud: the establishment of justifiable reliance. Accordingly, the fraud claims in the Amended Complaint must be dismissed. The (partial) Motion to Dismiss the Amended Complaint is granted. Counts II, III, and IV of the Amended Complaint (Fraudulent Misrepresentation, Concealment, and Nondisclosure) are dismissed with prejudice, and this case shall proceed as to Count I (Breach of Contract) only.

---

[13]   Since the Court grants Defendants' Motion to dismiss the fraud counts, it declines to opine on whether indemnification or rescission are appropriate remedies for the breach of contract claim, Count I, which Defendants' Motion and this Opinion do not address.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge